Gregory B. Collins (#023154)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com

*Attorneys for ThermoLife International, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ThermoLife International, LLC, an Arizona limited liability company, and Muscle Beach Nutrition, LLC, a California limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>BPI Sports, LLC, a Florida limited liability company,<br><br>        Defendant. | Case No. 2:20-cv-02091-SPL<br><br>**RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE**<br><br>(*Oral argument requested*) |

It is settled and controlling law that when a Lanham Act plaintiff alleges that a direct competitor falsely advertises products to the same customers from whom the plaintiff obtains sales, those allegations raise a presumption of injury. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011). In its motion to dismiss, BPI does not (indeed cannot) dispute this, but instead makes only one argument: Muscle Beach Nutrition's products and products that include ThermoLife's patented raw materials do not compete with BPI's falsely advertised products that include BCAAs.[1] This argument fails because Plaintiffs have detailed factual allegations of direct competition between BPI's falsely advertised products and Plaintiffs' products and products that include Plaintiffs' patented technology and patented raw materials. (Dkt. #1 ¶¶ 89-139.) Those allegations are accepted as true for purposes of BPI's motion to dismiss and BPI's arguments to the contrary do little more than violate the controlling Rule 12 standard by contradicting the allegations of the Complaint with unsupported lawyer argument.

The Ninth Circuit has established a straightforward test for determining whether Lanham Act parties are direct competitors: whether their products "vie for the same dollars from the same consumer and a misleading ad can upset their respective positions." *TrafficSchool.com,* 653 F.3d at 827. The Complaint's allegations plainly meet this test. Those allegations state that the parties vie for sales from the same sports nutrition customers by advertising their respective products as muscle builders, and in particular

---

[1] BPI's Response articulates a different phrasing of this argument on seemingly every page: "ThermoLife is wrong as the products [creatine-based products] at issue in the two suits are very different. … This suit by contrast, involves BCAA products." (Dkt. #29 at 2); "MBN does not even sell BCAA products." (*Id*. at 3); "BPI's and ThermoLife's licensees' products [do not] compete in the category of 'athletic performance]." (*Id*. at 4); "The significant degree of separation between an ingredient supplier and a finished product provider gets wider when the ingredients are totally different chemical entities (i.e., not BCAAs) in totally different forms (i.e., nitrates)." (*Id*. at 5); "There are no allegations in the Complaint that Cellucor's products contain BCAAs at all." (*Id*. at 6); "[C]reatine based (not BCAA-based) products, [that] include nitrates (not offered by BPI), [] do not compete with BPI's non-nitrate BCAA products." (*Id*. at 7); "MBN cannot establish direct competition or competitive harm because it does not compete with BPI's BCAA products." (*Id*. at 8); "ThermoLife and BPI are not direct competitors because they are not competing sources of the same ingredients or products to the same customers." (*Id*. at 10); "While the Complaint draws comparisons between products of ThermoLife's customers (such as MBN) and BPI, the comparisons do not establish direct competition because they are vastly different products from a compositional and functional standpoint." (*Id*. at 11); "MBN does not allege that either [of its products identified in the Complaint] contain BCAAs, or that BPI's products contain nitrate ingredients." (*Id*. at 12.)

1

asserting that their respective products:1) boost athletic performance and endurance; 2) support muscle growth; and 3) speed recovery. (Dkt. #1 ¶ 89-139.)  The same customers choose between Plaintiffs' products and Defendants' falsely advertised products based on their respective advertisements.

Indeed, when it has suited BPI's litigation goals, BPI has admitted that the parties' are direct competitors. In a separate case that BPI has filed in the Southern District of Florida, which is currently pending against both ThermoLife and Muscle Beach Nutrition, BPI has specifically alleged that the sports nutrition market is not as fragmented as it now claims in this Motion.[2] In suing both ThermoLife and Muscle Beach Nutrition for false patent marking, BPI alleged that sales of its creatine products are harmed as a result of Plaintiffs here placing ThermoLife's NO3-T trademark on Muscle Beach Nutrition's CRTN-3 and PRE-TRAIN products (and PRE-TRAIN is not a creatine product).[3]  While BPI was honest that these products vie for the same customers as BPI's falsely advertised products when such candor furthered BPI's own claims, in the current motion BPI contradicts its prior admissions and seeks to misdirect the Court from its previous claims by erroneously focusing on claimed differences in the product's ingredients.  BPI's focus on ingredients should not obscure the reality that it previously has admitted:  the parties' products directly compete by vying for the same customers.

Given BPI's admission in the Florida litigation that it is a direct competitor of Plaintiffs for purposes of BPI's claims against Plaintiffs, it is judicially estopped to argue otherwise in this Court.  BPI has sought to avoid such an estoppel and obtain inconsistent legal rulings by insisting that its claims against Plaintiffs be separated from and adjudicated in different courts, despite the obvious judicial economy and consistency that would have been achieved had BPI not moved to transfer ThermoLife's claims to this Court. BPI's admission in the Florida case regarding competition in the sports nutrition industry between products that include different ingredients not only gives rise to a judicial estoppel but it

---

[2] *BPI Sports, LLC v. ThermoLife, et al.*, Case No. 19-cv-60505 (S.D. Fla.) ("The BPI Florida Litigation") (Dkt. #92, BPI's Second Amended Complaint, copy attached as Ex. 1.) The Court can judicially notice of pleadings in other district court actions. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F3d 741, 746 n. 6 (9th Cir. 2006).
[3] Exhibit 1 ¶¶ 82, 129-134.

2

also demonstrates that Plaintiffs' allegations here are plausible—BPI's similar allegations survived a motion to dismiss in Florida.

BPI's prior admission recognizes the similar reality that products with different raw materials compete for the same consumers in this sports nutrition market. What makes sports nutrition products competitive is the workout performance results or effects that they claim to deliver, not what ingredients are in the product. The same is true for almost all industries. No one would argue that electric cars like Tesla's don't compete with gas engine cars in the automobile market, or that Weight Watchers' meals doesn't compete with Slim-Fast's shakes in the weight loss market. The competition between Plaintiffs' products and Defendant's products is no different here. The Plaintiffs' and Defendants' products are advertised to: 1) boost athletic performance and endurance; 2) support muscle growth; and 3) speed recovery. These effects are what consumers care about, not the specific ingredients in the product that cause these effects.

Moreover, Plaintiff ThermoLife's commercial injury flows directly from Muscle Beach Nutrition's presumed injury (and the presumed injury of its other customers, that all compete directly with BPI's products). After all, when Muscle Beach Nutrition (or any of ThermoLife's customers) loses a sale of its products to BPI's falsely advertised products, ThermoLife also loses a sale of its patented ingredients that are contained in the ThermoLife customer's products.[4]

In its motion, BPI also claims support in prior cases that have dismissed ThermoLife's false advertising claims—but which have not involved direct competition between the plaintiff and defendant. Here, by contrast, the inclusion of Muscle Beach Nutrition, which is presumed to have suffered commercial injury, makes ThermoLife's commercial injury (that flows directly therefrom) non-speculative (put another way, a 1:1 relationship is present here). Furthermore, BPI has admitted that both Muscle Beach

---

[4] ThermoLife actually loses out on providing its patented raw materials or patented technology in connection with its customer's product that was not sold. In some cases, this means that ThermoLife's customers, like Muscle Beach Nutrition, will delay restocking orders to purchase more of ThermoLife's ingredients, in other cases, as with JYM's products, it means that ThermoLife's customers will not owe ThermoLife a licensing fee.

3

Nutrition and ThermoLife are its competitors when it filed suit against them, the defendants involved in other cases made no such admission.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  LEGAL STANDARD

As BPI acknowledges in its Motion, the standard to be applied is whether, accepting as true the factual allegations in a plaintiff's complaint, those allegations state a "plausible claim for relief." *See Iqbal*, 556 U.S. at 663. A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This "plausibility" standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### II.  ARGUMENT.

Accepted as true are the following allegations of the Complaint, which BPI does not dispute, nor challenge the sufficiency of, in its motion:

- BPI's success in the sports nutrition market is built around what BPI advertises are "peptide linked" "bonded amino acid" BCAAs and other amino acids that form the basis of what BPI calls "Oligopeptide-Enzymatic Technology" or "Oligopeptide bonded BCAA's" and other "Oligopeptide bonded amino acids" (i.e., citrulline and glutamine). BPI claims it has created tetrapeptide bonded BCAAs and tetrapeptide bonded amino acids that have significant advantages over all other forms of BCAA ingredients and BCAA Products on the market.… BPI's marketing claims are all false. (Dkt. # 1 ¶ 2.)

- Laboratory testing on all BPI's BCAA Products, conducted by an independent third-party lab, has revealed that BPI's BCAA Products do not contain "peptide linked" BCAAs or "peptide linked" amino acids, much less tetrapeptides. The BCAAs and amino acids in BPI's products are nothing more than "free form" BCAAs and "free form" amino acids. BPI's products are not unique or special; in fact, BPI's products provide less actual BCAAs (or amino acids) than most other BCAA Products on the market and in addition to falsely advertising the type of BCAAs and amino acids in their products (the Oligopeptide BCAAs and amino acids BPI advertises do not exist), in many cases, BPI's BCAA Products contain less BCAAs than BPI advertises on its product labels. (Dkt. # 1 ¶ 3.)

- BPI's labels list ingredients that are not included in its BCAA Products, here: Glycyl-Alanyl-Lysine-Leucine; Glycyl-Alanyl-Lysine-Isoleucine; and Glycyl-Alanyl-Lysine-Valine (the "Oligopeptide ingredients"). All these ingredients are

- listed in the Supplement Facts Panels for BPI's BCAA Products rendering all BPI's BCAA Products with Oligopeptide ingredients on the labels "misbranded." (Dkt. # 1 ¶ 4.)

- Furthermore, many of BPI's products also contain a stamp of "validation", indicating that the BCAA Products were verified by an independent lab, ChromaDex, but this stamp is false; the products were not verified by the lab stamped on the products. BPI's label is "false and misleading." BPI advertises on its website that, "You can be confident that if it has a BPI label on it, what's on the label – matches what's in the bottle." (Dkt. # 1 ¶ 5.)

Thus, the allegations that are accepted as true establish that BPI is intentionally falsely advertising its products by touting falsely advertised ingredients that are not in the products. In its Motion, BPI claims that it is entitled to a get out of jail free card and escape any and all scrutiny because, supposedly, Plaintiffs have not alleged sufficient facts to permit a plausible inference that they have suffered any injury—*i.e.* it is not plausible that Plaintiffs have lost even one sale due to BPI's false advertising.

The Complaint suffices to plead injury. It now includes detailed factual allegations specifying the competition between BPI's falsely advertised BCAA Products[5], Muscle

---

[5] Despite that BPI advertises and classifies its products as "BCAA products", this classification is itself false. Again, BPI's outside the pleadings lawyer arguments that directly contradict Plaintiffs' pleadings are impermissible on a motion to dismiss. To avoid prejudiced to Plaintiffs from BPI making inaccurate statements in a motion to dismiss, Plaintiffs set the record straight in the attached Declaration of Ron Kramer as Exhibit 2 here, which analyzes a certificate of analysis related to BPI's BCAA Products. As the certificate of analysis, which is attached thereto and was filed with this Court as Exhibit 1 in prior action filed by ThermoLife, for BPI's Best BCAA Product shows, "Branch chain amino acids" (or BCAAs) are not the most predominant amino acids in BPI's product. For example, in its BEST BCAA product, independent lab tests reveal that a 10gram serving (the suggested serving size) contains the amino acids Lysine, Alanine, Glycine (which are not BCAAs) in the quantities of 1080mg, 943mg, and 883mg respectively. The actual BCAA ingredients (Leucine, Isolucine and Valine) are included in the lesser quantities of only 700mg, 295mg and 250mg per serving. Hence, BPI's products are not predominantly "BCAA products" at all (and, as alleged in Plaintiff's complaint, the BCAA's in all BPI's products are underdosed). (Ex. 2 ¶ 8.) BPI's argument that its falsely classified products deserve protection because they are falsely labeled as "BCAA products" is contrary to the Lanham Act. Furthermore, while Plaintiffs' PRE-TRAIN does not contain ineffective amounts of falsely advertised BCAA ingredients like BPI's product, Plaintiffs' product does contain trimethyl-glycine, PRE-TRAIN's chosen version of the amino acid glycine that is in all of BPI's BCAA product(s) in doses many times greater than any of the BCAAs in BPI's self-described "BCAA products." (Ex. 2 ¶ 6.)

5

Beach Nutrition's products, and products that include ThermoLife's patented technology and patented raw materials. As summarized briefly here, and explained in detail below, these allegations detail the following direct competition:

**A)** Muscle Beach Nutrition sells two products, PRE-TRAIN and CRTN-3, that directly compete with BPI's products for the same customers:

o   BPI's focus on the ingredients with its outside the pleadings assertions that are irrelevant to whether these products directly compete for the same customers, but BPI's assertions on these irrelevant points are also inaccurate. PRE-TRAIN is not a creatine product,[6] contrary to BPI's assertions PRE-TRAIN does not contain creatine. But, <u>PRE-TRAIN does contain ingredients that are the same, or partially the same as six of the eight main ingredients in BPI's BEST BCAA</u> Energy, including ingredients that are in all of BPI's BCAA Products.[7] And, as alleged, BPI markets its falsely advertised products as having the exact same benefits as PRE-TRAIN, and BPI's products are sold through the same commercial channels, and target the same consumers as PRE-TRAIN. (Dkt. # 1 ¶ 136.)

o   CRTN-3 has a total of eight main ingredients, three of those include creatine, but the other <u>five of the ingredients in CRTN-3 are also ingredients found in BPI's Best BCAA Recharged product</u>.[8] Furthermore, like PRE-TRAIN, BPI markets its BCAA Products as having the exact same benefits as CRTN-3, so even though CRTN-3 has creatine in it, BPI advertises its products to do the provide the same benefits as CRTN-3, and the products are sold through the same commercial channels targeting the same consumers. (Dkt. # 1 ¶ 134.)

**B)** ThermoLife's patented technology and patented raw materials are featured in products that directly compete with BPI's falsely advertised products.

o   Muscle Beach Nutrition products CRTN-3 and PRE-TRAIN both include patented ingredients that are sourced from ThermoLife (Dkt. # 1 ¶ 133); so, when Muscle Beach Nutrition loses a sale to BPI, ThermoLife loses a sale.

o   Contrary to BPI's allegations (that none of the competitive products identified by Plaintiffs compete with Defendants products because they don't contain BCAAs), ThermoLife licenses its patented technology for use in products that do features BCAAs: Scivation's XTEND Elite BCAA is just one example. (Dkt. # 1 ¶ 115.) This product, which (again) includes BCAAs, is marketed and sold through the same commercial channels as BPI's falsely advertised BCAA Products; so, when Scivation's XTEND Elite BCAA loses a sale to BPI, ThermoLife also loses a sale. (Dkt. # 1 ¶ 121)

---

[6] Exhibit 2 ¶¶ 5-6.
[7] *Id*.
[8] Exhibit 2 ¶ 7.

Keresmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

    o      ThermoLife also sells and licenses its nitrate ingredients for use in numerous sports supplement products that directly compete with BPI's falsely advertised products. In fact, recognizing the direct competition between ThermoLife's nitrates and BPI's BCAA Products, BPI falsely touts its products as having the very same benefits as ThermoLife's nitrates, which steals sales from ThermoLife's customers and results in lost sales to ThermoLife. (Dkt. # 1 ¶¶ 103-108.)

    o      ThermoLife licenses its patented technology and sells its patented raw materials for use in many of the top-selling sports nutrition products. These products include the top-selling pre-workout product in the world: Cellucor's C4. BPI's BCAA Products frequently appear on dietary supplement sales websites as Top-50 products, right next to C4. Furthermore, the most well-known supplement marketplace in the world GNC.com places C4 (and other products that include ThermoLife's nitrates) on its virtual shelves right next to BPI's BCAA Products in the "Muscle Builder" category. (Dkt. # 1 ¶¶ 109-131.)

These allegations, which must be accepted as true, are more than sufficient to plead direct competition and commercial injury.

Lastly, because it is unable to establish the insufficiency of the operative Complaint, BPI also aims to misdirect the outcome on its motion by contending that Plaintiffs' pleading suffers the same fate as ThermoLife's prior Complaint. (Dkt. # 29 at 12.) BPI ignores, however, the clear and dispositive difference between the current Complaint and the prior one. This Court previously dismissed claims brought by just ThermoLife, without Muscle Beach Nutrition as a co-plaintiff, against BPI because it found that ThermoLife's pleading lacked sufficient allegations to establish the type of one-for-one relationship between ThermoLife and its customers that is required to plead injury when there is no direct competition. As the Court stated:

(1)    "Plaintiff [then just ThermoLife] fails to allege that it is in the same industry as Defendant or is in any way directly competitive with Defendants." (Dkt. # 28 at 4.)

(2)    "Plaintiff [again, then just ThermoLife] fails to establish a specific commercial injury. … Plaintiff does not name any specific licensee who is in direct competition with Defendant and has suffered injury due to Defendant's conduct." (Dkt. # 28 at 5.)

Contrary to BPI's argument, the Complaint, now filed on behalf of both ThermoLife and one of its licensees/customers directly addresses the deficiencies that the Court

7

previously identified: direct competition and competitive injury.

### A. Muscle Beach Nutrition Is Entitled To A Presumption Of Injury; Muscle Beach Nutrition's Products Directly Compete With BPI's Falsely Advertised Products.

While BPI acknowledges that "commercial injury must be presumed when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to misled consumers", BPI argues that this presumption does not apply here. (Dkt. # 29 at 14.) With respect to Plaintiff Muscle Beach Nutrition, BPI is wrong.

In *TrafficSchool.com*, the Ninth Circuit announced the rule that injury would be presumed in Lanham Act cases "when defendant and plaintiff are direct competitors and defendant's misrepresentations has a tendency to misled consumers." *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 826 (9th Cir. 2011). As the Ninth Circuit explained, "Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't 'conjectural' or 'hypothetical.'" *Id*. at 825-26.

BPI claims this presumption does not apply to Muscle Beach Nutrition's claims because Muscle Beach Nutrition's "creatine-based products … contain nitrate ingredients, not BCAAs."[9] Contrary to BPI's argument, *TrafficSchool.com* does not require the parties sell the exact same product before a presumption of injury apply; what matters is whether the parties seek to sell their products to the same customers. In announcing the presumption of injury, the Ninth Circuit provided the following example: "If a film's distributor wrongfully indicates that a film is ""PG"-rated when in reality it should be "R"-rated, a competitor with a PG-rated film would have standing: the mis-rated film theoretically

---

[9] BPI also argues that the presumption of injury does not apply because BPI is not engaged in comparative advertising with Muscle Beach Nutrition's products. Contrary to BPI argument, *TrafficSchool.com* says *nothing* about "comparative advertising" as a requirement for a presumption of injury to arise. *TrafficSchool.com* in fact did not involve "comparative advertising"—the false advertising at issue in that case deceptively suggested that the state Department of Motor Vehicles ad recommended a for-profit website unaffiliated with the DMV. *Id*. at 825-26. The defendants' false advertising gave them an advantage over competitors who competed in the same market for traffic school referral revenue, but the false advertising did *not* compare the defendants' service to the plaintiffs' competing service. *See id.*

draws young audiences away from the competitor's film because of the misrepresentation concerning the suitability of the content." Thus, as the Ninth Circuit explained, a rated-R film and a rated-PG film are "direct competitors", because they "vie for the same dollars from the same consumer and a misleading ad can upset their respective positions." *Id*. at 827. Accepting BPI's argument of non-competition would be the equivalent of the Ninth Circuit ruling in *TrafficSchool.com* that movies don't compete unless they have the same actors or the same plot line. The Ninth Circuit instead presumed harm when the parties "vie for the same dollars from the same consumer and a misleading ad can upset their respective positions." *Id*. at 827. That indisputably is the case here—BPI and Plaintiffs vie for the same sports nutrition customers.

In addition to misstating Ninth Circuit precedent, BPI asks the Court to accept BPI's unsupported assertions, instead of following the required motion to dismiss standard that Muscle Beach Nutrition's well-pleaded allegations of direct competition are accepted as true. For example, BPI argues:

- ■ "ThermoLife is wrong as the products [creatine-based products] at issue in the two suits are very different. … This suit by contrast, involves BCAA Products." (Dkt. #29 at 2.)
- ■ "MBN cannot establish direct competition or competitive harm because it does not compete with BPI's BCAA Products." (*Id*. at 8.)
- ■ "While the Complaint draws comparisons between products of ThermoLife's customers (such as MBN) and BPI, the comparisons do not establish direct competition because they are vastly different products from a compositional and functional standpoint." (*Id*. at 11.)
- ■ "MBN has not provided any factual allegations explaining how BPI's BCAA Products at issue here compete with its creatine-based products, which include nitrate ingredients as opposed to BCAAs." (*Id*. at 15.)

All of BPI's arguments are direct factual contradictions of the pleading. On a motion to dismiss, this is improper. As alleged by Muscle Beach Nutrition, BPI's falsely advertised products compete directly with Muscle Beach Nutrition's products. (Compl. ¶¶ 132-39.) As alleged, Muscle Beach Nutrition markets and sells a product named CRTN-3. This is a sports nutrition product, marketed as a muscle builder. The product includes the NO3-T trademark and ThermoLife licensed ingredients and technology. In addition to marketing its falsely advertised BCAA Products as "muscle builders" in direct competition with

9

Muscle Beach Nutrition's CRTN-3 product, BPI also advertises that its falsely advertised BCAA Products provide the exact same major benefits that CRTN-3 is advertised to provide. Those benefits are, to 1) boost athletic performance and endurance; 2) support muscle growth; and 3) speed recovery, and consumers looking for products to provide those benefits would have to choose between the advertisements of Plaintiffs' products and Defendant's falsely advertised products. (Compl. ¶¶ 132-39.)

Muscle Beach also markets and sells a product named PRE-TRAIN (which, contrary to what BPI Motion falsely asserts, does not contain creatine). (Exhibit 2 ¶¶ 4-5.) PRE-TRAIN is, as its name suggests, marketed and sold in the sports nutrition market to be taken before a workout. (Compl. ¶¶ 135-136.) The product also includes the NO3-T trademark and ThermoLife licensed ingredients and technology. Defendant also markets its falsely advertised BCAA Products to be taken before a workout and puts them in direct competition with Muscle Beach's PRE-TRAIN product. BPI also advertises that its falsely advertised BCAA Products provide the same benefits to consumers that PRE-TRAIN is advertised to provided. Again, consumers looking for products that 1) boost athletic performance and endurance; 2) support muscle growth; and 3) speed recovery would have to choose between Plaintiff's products and Defendant's falsely advertise products. (*Id*. ¶¶ 135-136.)

Furthermore, as stated previously, BPI's Second Amended Complaint in the Southern District of Florida specifically identifies CRTN-3 and PRE-TRAIN as products that compete directly with BPI's products. Consequently, there can be no question that all BPI's falsely advertised BCAA Products are in direct competition Muscle Beach's CRTN-3 and PRE-TRAIN products. (*Id*. ¶139.)

In sum, on the pleadings, only one conclusion is appropriate, "anytime a consumer buys a misbranded and falsely advertised BPI BCAA product instead of a directly competitive Muscle Beach product, Muscle Beach loses a sale and loses money as a direct result of BPI's intentional misbranding and false advertising." (*Id*. ¶139.) Indeed, because BPI and Muscle Beach Nutrition are direct competitors, Muscle Beach Nutrition is entitled

to this presumption of commercial injury. This is the only element of Muscle Beach Nutrition's claim that BPI challenges, and all BPI's arguments fail.

**B.   The Complaint Pleads Plausible Facts Supporting ThermoLife's Injury.**

The Court previously dismissed ThermoLife's lawsuit against BPI because: (1) "Plaintiff [then just ThermoLife] fails to allege that it is in the same industry as Defendant or is in any way directly competitive with Defendants" (Dkt. #28 at 4) and (2) "Plaintiff [again, then just ThermoLife] fails to establish a specific commercial injury. … Plaintiff does not name any specific licensee who is in direct competition with Defendant and has suffered injury due to Defendant's conduct." (Dkt. #28 at 5.) Contrary to BPI's argument, Plaintiffs' pending Complaint, with Muscle Beach Nutrition now included, pleads plausible facts addressing the Court's prior concerns and supporting a commercial injury. Indeed, the Complaint also includes detailed factual allegations providing additional details regarding competition between BPI's falsely advertised products, Muscle Beach Nutrition's products, and products that include ThermoLife's patented raw materials.

**1.   Addressing The Court's Prior Order, The Complaint Alleges Facts Establishing That ThermoLife Is In The Same Industry As BPI And The Complaint Names Specific Licenses That Lost Sales.**

As the Court required, ThermoLife has alleged facts demonstrating that it is more than a licensor of patented technology, it sells millions of dollars in patented raw materials every year to the largest dietary supplement companies in the industry. (Compl. ¶ 99.) And, ThermoLife has also alleged facts that provide the names of ThermoLife's specific licensees that, like Muscle Beach Nutrition, are in direct competition with BPI and have suffered injury, which (as highlighted through the 1:1relationship between Muscle Beach Nutrition and ThermoLife) results in a commercial injury to ThermoLife. (*Id*. ¶¶ 103-139.) This is all that the Court's prior Order found lacking and ThermoLife has added detailed allegations to its pleading on this point in overwhelming abundance.

**2.   The Complaint Includes Additional Allegations Establishing Competitive Injury Resulting From Lost Sales Of Patented Raw Materials To Muscle Beach Nutrition (Which Has A 1:1 Relationship With ThermoLife).**

In addition to establishing that ThermoLife is a market participant and naming

specific ThermoLife customers that have suffered a loss, the Complaint now pleads additional plausible facts establishing a commercial injury.

With Muscle Beach Nutrition included, Plaintiffs' Complaint pleads a 1:1 relationship with an identified customer that is presumed to have lost sales to BPI. As explained previously in ThermoLife's briefing before this Court, the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 134 S.Ct. 1377 (2014), does not narrow standing to only those that have a 1:1 relationship with a direct competitor that lost a sale due to the defendant's false advertising. Nonetheless, if this Court were to require that standard, the Complaint now identifies a direct competitor of BPI's that ThermoLife has a 1:1 relationship with: Muscle Beach Nutrition. Muscle Beach Nutrition obtains patented raw materials from ThermoLife for use in its products, that compete directly with BPI's products. (Compl. ¶ 132.) This means anytime that Muscle Beach Nutrition loses a sale to BPI's falsely advertised products, ThermoLife also loses a sale to Muscle Beach Nutrition. Consequently, ThermoLife has met the *Lexmark* standard.

### 3. The Complaint Also Includes Additional Allegations Establishing Competitive Injury Resulting From Lost Sales Of Patented Raw Materials To Customers That <u>Sell BCAA Products</u> (Which Have A 1:1 Relationship With ThermoLife).

BPI contends that the Court can determine on the pleadings alone that BPI's falsely advertised BCAA Products only compete with other BCAA Products. While BPI's argument does not reflect reality, and the Court could not reach this conclusion from the pleadings, Plaintiffs' Complaint pleads facts demonstrating that ThermoLife has a 1:1 relationship with customers that do sell BCAA Products: as just one example, Scivation's XTEND Elite is a "BCAA Product." (Compl. ¶¶ 115-122.) As alleged, the XTEND brand of BCAA Products is the biggest or is the second biggest seller of BCAA Products in the United States. (*Id*. ¶ 116.) XTEND Elite is a BCAA product that includes a unique and patented ingredient licensed and purchased from ThermoLife, and like almost all ThermoLife Component Products, XTEND Elite is directly competitive with BPI's misbranded and falsely advertised BCAA Products. (*Id*. ¶139.) As the Complaint

Keresmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

demonstrates, BPI's falsely advertised BCAA Products and XTEND Elite are advertised side-by-side competing for the same customers on in GNC's website. (Compl. ¶ 121.)

Thus, even if BPI's legally flawed lawyer argument were correct, that BCAA products can only compete with other BCAA products (and it is not), Plaintiffs' Complaint still pleads plausible claims. When XTEND Elite losses a sale to BPI's falsely advertised BCAA Product(s) (whose loss is presumed because they're direct competitors) ThermoLife losses a sale of its patented ingredients to XTEND Elite (*i.e.,* ThermoLife has a 1:1 relationship with any loss of sales to XTEND Elite). BPI's Motion must be denied.

### 4. The Complaint Includes Additional Allegations Establishing Competitive Injury Resulting From Lost Sales Of Popular Dietary Supplements That Include ThermoLife's Nitrates.

Even ignoring that ThermoLife's customer's products include BCAAs, BPI's non-competition argument cannot be credited on a motion to dismiss. As explained below, the Complaint alleges facts sufficient to establish direct competition between products that include ThermoLife's patented nitrate ingredients/technology and BPI's falsely advertised products.

#### a) BPI's Advertising Places Its Falsely Advertised Products In Direct Competition With ThermoLife Component Products That Include Nitrates.

In addition to identifying the direct competition between ThermoLife Component Products that include BCAAs and BPI's falsely advertised products, the Complaint also explains how products that contain ThermoLife's patented nitrates compete with BPI's falsely advertised BCAA Products.

First, as alleged, BPI's own advertising directly targets ThermoLife's patented raw materials. (*Id.* ¶ 103.) As pleaded, BPI advertises on its own website that the main benefits of all its BCAA Products are to: 1) boost athletic performance and endurance; 2) support muscle growth; and 3) speed recovery. These three main benefits are the same exact benefits that are provided by ThermoLife's patented nitrate ingredients. (*Id.* ¶¶ 103-107.) In fact, even BPI lists on its own website that these are the same benefits a consumer can

get from "nitrate supplementation"; the same "nitrate supplementation" that is the premise of all ThermoLife's patented ingredients and patented technologies and the products that contain them.[10] (*Id.*) In other words, BPI says on its own website that "nitrate supplementation", provides the same exact benefits as all of BPI's BCAA Products. So, any consumer seeking these benefits would need to choose a product advertised to provide these benefits: either BPI's intentionally misbranded and falsely advertised BCAA Products or ThermoLife Component Products.

### b) Third-Party Websites Demonstrate The Direct Competition Between These Products.

With BPI marketing its falsely advertised products as having the same benefits of products with nitrates, well known dietary supplement sales websites put BPI's falsely advertised products on virtual shelves in direct competition with products that include ThermoLife's nitrates; again, demonstrating market wide, direct competition.

The Complaint is filled with examples of direct competition between BPI's falsely advertised products and ThermoLife Component Products on the website of the most well-known retailer of sports nutrition products in the world: GNC. (*Id*. ¶¶ 108-122.) BPI asserts that the screen shots from GNC's website are "meaningless" because "the results in the Complaint do not reflect an ordinary consumer's experience, but rather, ThermoLife's (or ThermoLife's counsel's) experience." This is ludicrous. GNC is one of the largest sellers of dietary supplements; its website has not been manipulated to show competition where otherwise none exists. The Court certainly cannot credit BPI's argument here.

As the Complaint demonstrates, GNC sorts the thousands of products offered on its website by consumer "Goals" or "Departments." When a consumer sorts by these categories, to seek a desired goal, the consumer is presented with a set of products that often include both ThermoLife Component Products and BPI's falsely advertised BCAA Products side-by-side. For example, if a user sorts on GNC's website by "Departments" and then selects "Muscle Builders", several ThermoLife Component Products are displayed

---

[10] As the Court can see in the real-life product examples set forth in the Complaint at paragraphs 103-109, the benefits advertised by BPI for its falsely advertised BCAA Products are the exact same benefits advertised for ThermoLife Component Products.

at the top of the list along with BPI's BEST BCAA Product on the first two pages of the search. GNC's product search page also demonstrates that ThermoLife Component Products and BPI's BCAA Products compete in GNC's "Performance" category. (*Id*. ¶ 111.)

In addition to the direct competition evident on GNC's website, the direct competition is also evident on other sports nutrition supplement websites. BPI's falsely advertised BCAA Products appear at the top of supplement popularity lists next to the ThermoLife sourced "C4 Product" on many other popular dietary supplement websites. For example, BPI's BEST BCAA and C4 are featured together on the Top 50 Products list of NetNutri.com. (*Id*. ¶ 111.) On this Top 50 list, BPI's misbranded and falsely advertised BEST BCAA is displayed right next to Cellucor's C4 (a top-selling ThermoLife Component Product). (*Id*. ¶ 124.) Similarly, on Muscleandstrength.com another top selling sports nutrition retailer, BPI's BEST BCAA and Cellucor's C4 again appear next to each other on the Top 50 Products list.[11] (*Id*. ¶ 123-26.)

Clearly, consumers are choosing between these products at GNC, on NetNutri.com, Muscleandstength.com. There can be no dispute that BPI's misbranded and falsely advertised BCAA Products and ThermoLife Component Products, like C4, are direct competitors with each other, and there can likewise be no dispute that anytime a consumer purchases BPI's falsely advertised BCAA Products over a ThermoLife Component Product, ThermoLife suffers commercial injury.

In sum, contrary to BPI's argument, BPI has intentionally falsely advertised its BCAA Products as providing the exact same benefits that are provided from ThermoLife's patented nitrates and the products that contain them. With BPI's falsely advertised BCAA Products advertised to provide the same benefits as ThermoLife's nitrates, well-known third- party supplement websites, like GNC, have placed BPI's falsely advertised products on virtual shelves right next to top-selling products that include ThermoLife's patented technology and patented raw materials (several of which also include BCAAs). With these

---
[11] Here, BPI argues that products listed on third party websites as the top-50 dietary supplements don't compete with each other. This just simply is not true and, again, the Court cannot credit this lawyer argument on a motion to dismiss.

facts established, and with it undisputed that ThermoLife is the exclusive supplier of the nitrate technology and patented nitrate raw materials, relied upon by companies that sell products that are directly competitive with BPI's products, ThermoLife's Complaint establishes that ThermoLife falls within the "zone of interests" meant to be protected by the Lanham Act. The sale of an intentionally falsely advertised product by BPI, is a lost sale to a company who competes directly with BPI, if that company buys ingredients for that product from ThermoLife, it causes a competitive injury to ThermoLife.

## II. ThermoLife's Dismissed Cases In This District Are Not Applicable Here.

ThermoLife runs an FDA compliant business. In competition with ThermoLife, dozens of nefarious players have rushed into the market to exploit the lack of FDA enforcement in the dietary supplement industry, hurting ThermoLife's patented ingredient sales in the process. ThermoLife has brought six suits against those companies to try and recover for the harm that their unscrupulous business practices have caused to the market for ThermoLife's patented technology and patented raw materials. Importantly, in the suits that BPI has identified, ThermoLife is not seeking losses for all of the false advertising that has infiltrated the industry; ThermoLife is only seeking damages caused by each defendant's conduct. Proceedings after a motion to dismiss can establish a remedy tailored to the injury each defendant caused.

This case though, against BPI, is distinguishable from ThermoLife's prior suits. Contrary to BPI's argument, *ThermoLife International, LLC v. American Fitness Wholesalers*, Case No. 18-cv-04189 (D. Ariz.), is inapplicable because there ThermoLife brought suit against a dietary supplement marketplace ("A1"), not the manufacture of dietary supplements, like BPI. As ThermoLife's lawsuit alleged, while reputable dietary supplement marketplaces (like GNC) had pulled illegal dietary supplements from their stores, A1 decided to become the go-to marketplace for illegal, and unsafe, drug products masquerading as dietary supplements. The district court there held that ThermoLife did not have standing to sue a dietary supplement retailer because the allegations were too general to show harm arising from the parties non-competitive relationship, and the Ninth Circuit

Court of Appeals affirmed in an unpublished memorandum. *ThermoLife International, LLC v. American Fitness Wholesalers*, 2020 WL 7364809 (9th Cir. Dec. 15, 2020). Neither the district court's decision nor the Ninth Circuit's decision has any bearing on Plaintiffs' claims against BPI here. First, unlike in A1, the parties here are direct competitors. A1 is one-step up the supply chain from BPI; A1 doesn't market and sell its own dietary supplements. For this reason, the Ninth Circuit found that allegations of injury related to A1's conduct (the re-sale of supplements that it didn't advertise) were too speculative. By contrast, BPI creates the products and false advertisements and then falsely promotes the dietary supplements that are in direct competition with products that include ThermoLife's technology and raw materials. Second, ThermoLife customer/licensee Muscle Beach Nutrition is a co-plaintiff here. The inclusion of Muscle Beach Nutrition, which is presumed to have suffered commercial injury, makes ThermoLife's commercial injury (that flows directly therefrom) non-speculative (the 1:1 relationship is present here). Third, here BPI has admitted that both Muscle Beach Nutrition and ThermoLife are its competitors (Compl. ¶¶ 102, 137), obviously, A1 made no such admission.

The only other case that ThermoLife has had dismissed with prejudice is *ThermoLife v. Compound Solutions, Inc.,* Case No. 19-cv-01473. That decision is currently on appeal to the Ninth Circuit Court of Appeals and is scheduled for oral argument on March 5, 2021. There, Judge McNamee acknowledged that *TrafficSchool.com* would require that he presume injury, but found the allegations insufficient nonetheless. Thus, the salient and dispositive legal rule turns on whether there is direct competition.  For the reasons above, the allegations here plead direct competition.

The remaining cases cited by BPI all involve cases where ThermoLife decided to dismiss its claims without prejudice. These voluntary dismissals prove nothing other than the fact that ThermoLife has chosen to be judicious in the cases that it brings before this Court.

### III.   CONCLUSION

For the foregoing, the Court should deny BPI's Motion.

RESPECTFULLY SUBMITTED this 28th day of December, 2020.

        KERCSMAR & FELTUS PLLC


        By: *s/Greg Collins*
         Gregory B. Collins
         7150 East Camelback Road, Suite 285
         Scottsdale, Arizona 85251

        *Attorneys for ThermoLife International, LLC*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of December, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kevin D. Quigley
Benjamin C. Nielsen
QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004
kevin.quigley@quarles.com
benjamin.nielsen@quarles.com

Daniel Silverman
VENABLE LLP
2049 Century Park East, Suite 2300
Los Angeles, California 90067
dsilverman@venable.com

*Attorneys for Defendant BPI Sports, LLC*


By: *s/ Alexis Adelman*