**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, et al., | No.  CV-20-02091-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| BPI Sports LLC, | |
| Defendant. | |

Before the Court is Defendant BPI Sports, LLC's ("Defendant" or "BPI") Application for Attorneys' Fees (the "Application," Doc. 72). On September 30, 2022, the Court entered an Order (the "Fee Entitlement Order," Doc. 71) granting Defendant's Motion for Attorney's Fees and Costs (the "Fee Entitlement Motion," Doc. 53), finding that—pursuant to the Lanham Act and Federal Rule of Civil Procedure 41(d)—Defendant was entitled to the costs and attorneys' fees incurred in this case (the "Present Action") and in a previous action filed by Plaintiff ThermoLife International LLC ("ThermoLife" and, together with Muscle Beach Nutrition, LLC, "Plaintiffs") against Defendant: *ThermoLife International LLC v. BPI Sports LLC* (the "Initial Action"), No. 2:18-cv-04663-SPL (D. Ariz. Dec. 12, 2018). (*See* Doc. 71 at 22). The Fee Entitlement Order only addressed Defendant's entitlement to an award; it did not make any determination as to the amount of the award.[1] (*Id.* at 1). Upon finding that Defendant was entitled to an award, the Court

---

[1] This course of action—determining the issue of Plaintiffs' *liability* for fees and costs before determining the amount of such an award—was approved by the Court on

ordered Defendant to file the Application presently before the Court. (*Id.* at 23).

Defendant's Application has been fully briefed and is ready for review. (Docs. 72, 73 & 74). Defendant seeks an award of $530,332.67 in attorneys' fees.[2] (Doc. 74 at 12). For the following reasons, the Court grants Defendant's Application as modified.[3]

**I.      BACKGROUND**

The Court incorporates by reference its discussion of the background facts set forth in its Fee Entitlement Order, which describes in detail the Present and Initial Actions between these parties, including the specific claims Plaintiffs pursued against Defendant and the rather complicated procedural history of this litigation. (*See* Doc. 71 at 2–3).

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 54 provides that any "claim for attorneys' fees and related nontaxable expenses must be made by motion." Fed. R. Civ. P. 54(d)(2). "Unless a statute or a court order provides otherwise, the motion must:

> (i) be filed no later than 14 days after the entry of judgment;
>
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B). As noted above, the Court has already determined that Defendant is entitled to an award. (*See* Doc. 71). Thus, for purposes of this Order, the Court

---

September 15, 2022. (*See* Doc. 70); *see also* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services.").

[2] This amount includes the original $509,131.97 fee request made in Defendant's Application (Doc. 72 at 3) *plus* the $21,200.70 in fees that were incurred in drafting the Reply. (*See* Doc. 74 at 12).

[3] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

focuses primarily on the third of the above Rule 54 requirements—that is, the amount Defendant seeks in attorneys' fees and whether such amount is reasonable.

Rule 54 also provides that courts may establish their own local rules to resolve fee-related issues. Fed. R. Civ. P. 54(d)(2)(D). In this District, Local Rule of Civil Procedure ("LRCiv") 54.2 applies to requests for fees and related non-taxable expenses. Under LRCiv 54.2, "[a] party requesting an award of attorneys' fees must show that it is (a) eligible for an award, (b) entitled to an award, and (c) requesting a reasonable amount." *Thompson v. Ariz. Movers & Storage Inc.*, No. CV-17-03819-PHX-DGC, 2018 WL 2416187, at *1 (D. Ariz. May 29, 2018) (citing LRCiv 54.2(c)).[4] Again, the Court has already made determinations as to the eligibility and entitlement requirements; only the reasonableness requirement remains at issue.

## III.   DISCUSSION

In opposing Defendant's Application, Plaintiffs make three broad arguments. First, Plaintiffs argue that Defendant improperly seeks fees for non-Lanham Act work and that such work is not compensable. Second, Plaintiffs argue that Defendant's award should be reduced based on this Court's consideration of the relevant "reasonableness" factors (the *Kerr* factors). Third, Plaintiffs seek reductions based on block billing and for unreasonable or excessive time spent preparing the Fee Entitlement Motion and the instant Application. The Court will consider each of these three broad arguments in turn.

///

---

[4] LRCiv 54.2(d) also requires the moving party to attach certain supporting documentation to any request for attorneys' fees: "(1) a statement of consultation, (2) a complete copy of any written fee agreement, (3) a task-based itemized statement of time expended and expenses incurred, and (4) an affidavit of moving counsel." *Rindlisbacher v. Steinway & Sons Inc.*, No. CV-18-01131-PHX-MTL, 2021 WL 2434207, at *2 (D. Ariz. May 26, 2021) (citing LRCiv 54.2(d)). Here, Defendant attaches the proper supporting documentation: (1) Statement of Consultation (Doc. 72-1 at 108–09); (2) complete copies of the fully executed Fee Agreements between Defendant and counsel (Doc. 72-1 at 110–24); (3) task-based itemized statements of time expended and expenses incurred (Doc. 72-1 at 1–106); and (4) affidavits from moving counsel (Docs. 72-2, 72-3 & 72-4).

### A. Non-Lanham Act Work

Plaintiffs first argue that Defendant's Application "seeks fees for certain work that is not compensable as an attorney's fee award." (Doc. 73 at 6). Plaintiffs identify four categories of work for which they argue Defendant cannot receive an award of fees: (i) work on the FDUTPA, civil conspiracy, and other state-law claims; (ii) work related to 28 U.S.C. § 1927; (iii) work related to ThermoLife patents and patent litigations; and (iv) work related to insurance, indemnification, and audit entries. (*Id.* at 8–9). Plaintiffs argue that Defendant is only entitled to fees for work related to Plaintiffs' Lanham Act claim and that these four categories of work should be excluded from Defendant's fee request because they involved work unrelated to the Lanham Act claim.

#### 1. Work on FDUTPA, Civil Conspiracy, and Unfair Competition Claims

"The Lanham Act simply provides that '[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party,' 15 U.S.C. § 1117(a); it does not address the proper procedure for determining reasonable attorney fees in a case involving non-Lanham Act claims and unsuccessful Lanham Act claims, in addition to successful claims under the Act." *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000). "[A]s a general matter, a prevailing party in a case involving Lanham and non-Lanham Act claims can recover attorneys' fees *only for work related to the Lanham Act claims*." *Id.* (emphasis added). Thus, the Ninth Circuit recognizes a "general rule of apportionment" whereby the Court has a "duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment" between fees related to Lanham Act and non-Lanham Act claims, even where an *exact* apportionment is impossible. *Id.* (emphasis in original). The only exception to this general rule is where the claims are "so inextricably intertwined that even an estimated adjustment would be meaningless." *Id.*

Plaintiffs argue that any time entries relating to work on the FDUTPA, civil conspiracy, and unfair competition claims should be reduced from Defendant's fee request because such work related to non-Lanham Act, state-law claims. (Doc. 73 at 8). Defendant responds by arguing that "the Court determined that the FDUTPA claim was sufficiently

intertwined with the Lanham Act claim such that any recovery in connection with the Lanham Act was sufficient to 'cover Defendant's efforts with respect to the FDUTPA claim.'" (Doc. 74 at 4 (quoting Doc. 71 at 22)).

Defendant misconstrues the Court's holding. The Fee Entitlement Order did not make any express determination as to how "intertwined" the state-law and Lanham Act claims were. Rather, the Court found that "*Defendant fails to explain how* Plaintiffs' FDUTPA claim was not 'inseparably intertwined' with Plaintiffs' Lanham Act claim." (Doc. 71 at 22 (emphasis added)). Likewise, the Court did not find that an award pursuant to the Lanham Act was "sufficient to cover" Defendant's expenses with respect to the state-law claims. Rather, the Court found that "*Defendant fails to explain* . . . why any fees and costs awarded pursuant to the Lanham Act would not be sufficient to cover Defendant's efforts with respect to the FDUTPA claim." (*Id.* (emphasis added)). Moreover, given that Defendant had not yet provided the Court with an itemized breakdown of the various tasks for which fees are sought, it was impossible for the Court to even attempt apportionment, let alone make any definitive finding as to whether the FDUTPA, civil conspiracy, and unfair competition claims were "inseparably intertwined" with the Lanham Act claim.

Defendant has now provided the Court with an itemized breakdown of the work for which fees are requested. (Doc. 72-1). Reviewing the time entries, the Court finds that apportionment is possible, and that the FDUTPA, civil conspiracy, and unfair competition claims are therefore *not* inseparably intertwined with the Lanham Act claims. Specifically, Defendant requests fees for 2.4 hours of work related to the FDUTPA claim. (*See id.* at 38, 48, & 55). This work equated to $1,489 in requested fees that will be reduced from Venable LLP's ("Venable") final award. Likewise, Defendant requests fees for 12.1 hours of work related to the civil conspiracy and unfair competition claims (4.0 hours for Venable and 8.1 hours for Hillyer Legal, PLLC ("Hillyer Legal")). (*See id.* at 4, 10, 23, 76, 79–80). This work equated to $5,546 in requested fees that will be reduced from both Venable and Hillyer Legal's final award—with a $2,307 reduction from Venable's fee award and a $3,240 reduction from Hillyer Legal's fee award.

In sum, Venable's final fee award shall be reduced by $3,795.68 and Hillyer Legal's final fee award shall be reduced by $3,240.00 for work related to the FDUTPA, unfair competition, and civil conspiracy claims.

### 2. Work Related to 28 U.S.C. § 1927

Plaintiffs request that the Court reduce Defendant's fee award by five percent, or over $25,000, for time spent working on Plaintiffs' request for fees under 28 U.S.C. § 1927. Plaintiffs reason that the Court denied Defendant's request for fees under § 1927, and that this therefore means that Defendant should not be entitled to fees for the work Defendant did in drafting its § 1927 arguments.

The Court is unpersuaded. Plaintiffs seem to be arguing that an attorney is not entitled to fees for work put into arguments that are ultimately rejected by a court. Plaintiffs do not provide, and this Court is itself unaware of, any legal authority standing for such a proposition. Moreover, the Court did not even *reject* Defendant's § 1927 argument in the first place. Rather, the Court found that it "need not address . . . whether § 1927 provides an independent basis for an award" because it had already found that an award of fees was appropriate under the Lanham Act and Rule 41(d). (Doc. 71 at 22). The Court will not reduce Defendant's fee award for time spent working on its § 1927 argument.

### 3. Work Related to ThermoLife Patents and Patent Litigations

Plaintiffs request a reduction of all time entries indicating work related to ThermoLife's patent portfolio and ThermoLife's patent litigations. (Doc. 73 at 9). Plaintiffs argue that such work was "entirely unrelated" to the Lanham Act claim. (*Id.*). Specifically, Plaintiffs take issue with thirteen time entries—all logged by Venable lead counsel Daniel S. Silverman—requesting fees for work related to ThermoLife's patents or patent litigations. (*See* Doc. 73-7 at 8–9). These time entries occurred between March 19, 2019 and February 19, 2020. (*Id.*). Although these thirteen entries resulted in $6,141.25 in requested fees, Plaintiffs request a reduction of $5,596.00. (Doc. 73 at 9; Doc. 73-6 at 2).

Defendant argues that "work relating to ThermoLife's patents was reasonably necessary to the defense of the Initial Action and [the Present] Action because

ThermoLife's entire case rested upon the purported validity of its patents." (Doc. 74 at 5). Defendant explains that "in the event ThermoLife's patents were deemed invalid, that would have provided [Defendant] with not only a full merits defense, but also with a potential unclean hands defense and potential counterclaims given that Plaintiffs' claim for their ingredients and/or products would have been rendered provably false." (*Id.*). The Court is satisfied that work relating to ThermoLife's patents was reasonable and relevant to Defendant's case—and specifically relevant to the Lanham Act claims—and that reduction of this time from the fee award is not necessary.

### 4. Work Related to Insurance, Indemnification, and Audit Entries

Plaintiffs request a reduction of all time entries for work related to insurance coverage, apparent indemnification issues, and responding to audit letters. (Doc. 73 at 9). Plaintiffs argue that such work was "not reasonably related" to the Lanham Act claim. (*Id.*). Specifically, Plaintiffs take issue with 38 time entries (all logged between March 7, 2019 and December 18, 2019) requesting fees for work related to insurance or indemnification issues and seven time entries (three logged between March and April 2019 and four logged in March or August 2020) requesting fees for reviewing and responding to audit letters. (Doc. 73-7 at 4–6). Combined, these 45 time entries represent $24,484.68 in requested fees by Defendant. Plaintiff requests a reduction of $22,612.50. (Doc. 73 at 9; Doc. 73-6 at 2).

Defendant argues that work related to insurance and indemnification was "reasonably necessary and directly relevant to [Defendant]'s defense given the potential availability of insurance coverage and indemnification from third parties to cover [Defendant]'s legal expenses and a potential adverse judgment as a result of Plaintiffs' claims." (Doc. 74 at 5). Defendant argues that work related to reviewing and responding to audit letters was a direct result of this litigation and Defendant "would not have been required to draft audit disclosures . . . had Plaintiffs not pursued their frivolous claims." (*Id.*). The Court is persuaded by Defendant's argument and is satisfied that work relating to insurance, indemnification, and audit letters was reasonable and relevant to Defendant's case and to the Lanham Act claims. The Court will not reduce the fee award for this reason.

### B.  Reasonableness Analysis and the *Kerr* Factors

In assessing reasonableness, federal courts begin with the "lodestar figure," which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Next, the Court "determines whether to modify the lodestar figure, upward or downward, based on factors not subsumed in the lodestar figure." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "These factors are known as the *Kerr* factors." *Stetson v. Grissom*, 821 F.3d 1157, 1167 (9th Cir. 2016) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). "There is a strong assumption that the 'lodestar' method represents the reasonable fee," *Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2021 WL 3400608, at *6 (D. Ariz. July 20, 2021), and an adjustment based on the factors is generally appropriate "only in rare or exceptional cases." *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988)). The factors are:

> (1) the time and labor required;
>
> (2) the novelty and difficulty of the questions involved;
>
> (3) the skill requisite to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
>
> (5) the customary fee;
>
> (6) whether the fee is fixed or contingent;
>
> (7) time limitations imposed by the client or the circumstances;
>
> (8) the amount involved and the results obtained;
>
> (9) the experience, reputation, and ability of the attorneys;
>
> (10) the 'undesirability' of the case;
>
> (11) the nature and length of the professional relationship with the client; and
>
> (12) awards in similar cases.

*Kerr*, 526 F.2d at 70; *see also* LRCiv 54.2(c)(3) (providing same list of factors for determining reasonableness of requested award); *Isom v. JDA Software Inc.*, 225 F. Supp.

8

3d 880, 888 (D. Ariz. 2016) (listing some of *Kerr* factors and citing to LRCiv 54.2(c)(3)).

Here, Defendant's Application addresses the relevant *Kerr* factors and requests a total award of $530,332.67 in reasonable attorneys' fees for 805.1 hours of attorney work. (Doc. 74 at 12; Doc. 72 at 5). These figures include the fee requests and hours logged for three separate firms which worked on Defendant's case: (i) Venable requests $417,476.33 in fees for 580.7 hours of attorney time; (ii) Hillyer Legal requests $39,560 in fees for 98.9 hours of attorney time; and (iii) Quarles & Brady LLP ("Quarles & Brady") requests $73,296.44 in fees for 125.5 hours of attorney time. (Doc. 72-1 at 73, 80, & 106; Doc. 74-1 at 18). The Court will review Defendant's request under the *Kerr* factors.

### 1. *Time and Labor Required*

Defendant represents that the Present Action and the Initial Action required 805.1 hours of attorney work. (Doc. 72 at 5; Doc. 74 at 12). Defendant argues that these hours were necessary and reasonable given the nature and complexity of the facts and law involved and the unreasonable manner in which Plaintiffs conducted this litigation. (Doc. 72 at 5). On this factor, Plaintiffs primarily argue that Defendant's fee request is excessive because Defendant "unnecessarily retained three separate law firms to work on this case," which caused "significant inefficiencies and duplicative efforts." (Doc. 73 at 10). Plaintiffs contend that Venable was "well equipped to handle the entire dispute," and that Defendant's hiring of Hillyer Legal and Quarles & Brady was unnecessary. (*Id.* at 10–12).

As an initial matter, the Court finds that Defendant's use of three separate law firms was not unreasonable on its face. The work done by both Hillyer Legal and Quarles & Brady was necessary to the litigation; even if Defendant had not retained Hillyer Legal and Quarles & Brady, *someone* would have still been responsible for the work that Hillyer Legal and Quarles & Brady completed. Such responsibility would have fallen on Venable and would have been subject to Venable's higher billing rates. At least in this respect, Defendant's hiring of Hillyer Legal and Quarles & Brady likely *reduced* the fees in this case. Moreover, the Court recognizes Defendant's contention that retaining Hillyer Legal and Quarles & Brady likely led to greater efficiency in this litigation, given their respective

areas of experience. Attorney Gregory L. Hillyer, for example, was lead counsel in a separate Florida action between these same parties, and his involvement here was therefore reasonable to ensure that Defendant maintained uniformity in its arguments and positions in the separate litigations. Moreover, Mr. Hillyer was familiar with the underlying facts of this case, including the patents, the products at issue, and the relevant scientific knowledge involved. Quarles & Brady, for its part, has greater familiarity with the Local Rules of this Court than does Venable, given Quarles & Brady's Arizona office location and Venable being based in Los Angeles, California. Quarles & Brady was thus better equipped for tasks such as ensuring compliance with Local Rules, addressing scheduling and deadline issues, and communicating with the Court as it relates to filing and other procedures.

That said, having fully reviewed the time logs for all three firms, the Court agrees with Plaintiffs—to some extent—that Hillyer Legal's participation in this litigation led to at least some unreasonable and excessive fees for which a reduction to the final fee award is appropriate. The Court does *not* find the same with respect to Quarles & Brady.

With respect to Hillyer Legal, Mr. Hillyer requests $39,560 in fees for 98.9 hours of attorney work almost entirely consisting of researching for and drafting two briefs filed by Defendant during the Initial Action.[5] (Doc. 72-1 at 75–80). During the Initial and Present Actions, Defendant filed a total of three motions to dismiss and two replies in support of those motions to dismiss.[6] Mr. Hillyer assisted in drafting only *two* of these five briefs: Defendant's Reply brief in support of its first motion to dismiss in the Initial Action, and Defendant's second motion to dismiss in the Initial Action. (*See* Doc. 72-1 at 75–80). Venable, conversely, requests fees for work that it did on all five briefs. After reviewing the relevant time entries for each firm, the Court finds that Mr. Hillyer's participation led

---

[5] Specifically, Mr. Hillyer requests fees for 98.4 hours of work during the Initial Action and just 0.5 hours of work during the Present Action. (Doc. 72-1 at 80).

[6] Defendant did not file any reply in support of its *second* motion to dismiss in the Initial Action because Plaintiff voluntarily dismissed the case before Defendant could do so. *See* Initial Action, No. 2:18-cv-04663-SPL, ECF Nos. 42 & 43.

to increased billing on at least one of the briefs that he worked on, disproportionate to the three briefs that were worked on strictly by Venable. Specifically, Venable requests fees for approximately 36 hours of work on the first motion to dismiss (filed in the Initial Action and drafted solely by Venable), and for approximately 27 hours of work on the third motion to dismiss (filed in the Present Action and drafted solely by Venable). (*See* Doc. 72-1 at 2–7; 37–39). In contrast, Venable and Hillyer Legal combine to request fees for approximately *88.9 hours of work* on Defendant's second motion to dismiss (filed in the Initial Action), including approximately 15 hours by Venable, (*see id.* at 21–24), and 73.9 hours by Hillyer Legal. (*Id.* at 76–80). Defendant does not offer any reasonable explanation for why the second motion to dismiss took nearly *three times more work* than did the first or third motions to dismiss. The Court finds that a reduction is appropriate with respect to the time Hillyer Legal and Venable spent working on Defendant's second motion to dismiss. The Court will reduce the approximately 88.9 hours of combined work by 50 percent to better align with the time spent on the other motions to dismiss.

With respect to Mr. Hillyer's time, the Court first notes that it has already reduced 7.1 of the 73.9 hours that are now subject to an additional 50-percent reduction.[7] *See supra* pt. III, sec. A(1). Specifically, the Court reduced Mr. Hillyer's January 8, 2020 entry by 2.4 hours (from 5.9 hours to 3.5 hours), his January 9, 2020 entry by 3.5 hours (from 4.5 hours to 1.0 hour), and his January 13, 2020 entry by 1.2 hours (from 6.5 hours to 5.3 hours). *See id.* As explained above, these reductions were due to the entries containing tasks related to non-Lanham Act, state law claims. *See id.* To avoid double-penalizing Mr. Hillyer, the Court accounts for this 7.1-hour reduction *before* applying the additional 50-percent reduction. Thus, Mr. Hillyer requests fees for 66.8 hours—rather than 73.9 hours—of work related to the second motion to dismiss. The Court reduces *this* amount by 50 percent, which results in a 33.4-hour reduction and a $13,360 reduction to Mr. Hillyer's

---

[7] Although the Court actually reduced Mr. Hillyer's time by 8.1 hours in the above section, the 1.0-hour reduction on the May 8, 2019 entry is *not* subject to this 50-percent discount because it did not relate to work on the second motion to dismiss.

final fee award. Venable's time will be reduced by 7.5 hours, resulting in a $5,180 reduction to Venable's final fee award.[8] The Court finds that these reductions account for any excessive or duplicative fees incurred in drafting the second motion to dismiss that were the result of two firms working on the motion.[9]

With respect to Quarles & Brady, Plaintiffs argue that Defendant's hiring of Quarles & Brady as local counsel was unnecessary and excessive. (Doc. 73 at 12). Quarles & Brady requests $73,296.44 in fees for 125.5 hours of attorney work during both the Initial and Present Actions. (Doc. 72-1 at 106). Plaintiffs argue that this fee request is unreasonable because the rules of this Court do not require local counsel and Venable—as "one of the largest and most prominent national law firms," according to Plaintiffs—was capable of doing the work of local counsel itself. (Doc. 73 at 12). Plaintiffs request a complete reduction of Quarles & Brady's fee request or, at minimum, a reduction of at least 75 percent. (*Id.*). The Court will not grant either request. As Defendant points out, "[t]he fact that the Local Rules do not require the use of local counsel does not mean [that local counsel] cannot be used to add value and increase efficiency." (Doc. 74 at 7). Moreover,

---

[8] With the exception of 0.8 hours logged by Attorney Weintrop on December 20, 2019, all of Venable's 15 hours spent working on the second motion to dismiss were logged by Mr. Silverman. (*See* Doc. 72-1 at 21–24). Roughly half of the 15 hours were logged in December 2019 and the other half in January 2020. (*See id.*). Mr. Silverman's rate increased from $790 per hour ($671.50 with the 15% discount) to $835 per hour ($709.75 with the 15% discount) on January 1, 2020. (Doc. 72-3 at 5).

Thus, the Court's 7.5 hour reduction to Venable's time consists of 3.75 hours at Mr. Silverman's 2019 rate (approximately $2,518) and 3.75 hours at his 2020 rate (approximately $2,662), resulting in a total reduction of $5,180.

[9] As for work on the Replies, Venable requests fees for 34 hours of work on the Reply in support of Defendant's *third* motion to dismiss (filed in the Present Action and drafted solely by Venable). (Doc. 72-1 at 40–43). In contrast, Venable and Hillyer Legal combine to request fees for 41 hours of work on the Reply in support of the *first* motion to dismiss (filed in the Initial Action), including approximately 16.5 hours for Venable and 24.5 hours for Hillyer Legal. (*Id.* at 10–13, 75–76). The Court does not find this seven-hour difference so significant as to be unreasonable. Although it could be argued that Mr. Hillyer's participation resulted in the first Reply taking seven hours longer than the third, it appears just as likely that the briefing simply took longer the first time it was done.

12

the Court reviewed Quarles & Brady's entire fee request and did not find any obviously unreasonable or excessive work. Likewise, Plaintiffs do not specifically identify any unreasonable or excessive time entries but rather argue for the wholesale rejection of all work done by Quarles & Brady. (*See* Doc. 73 at 12). Such a reduction is not warranted, as Quarles & Brady's time entries consisted entirely of reasonable, procedure-related tasks, most of which were for less than one hour of billable time. Specifically, Quarles & Brady focused on ensuring compliance with the Local Rules, addressing scheduling and deadline issues, and communicating with the Court as it relates to filing and various procedures. Such tasks are necessary in the litigation of *any* case and would have been necessary even if Defendant had not hired the firm. As noted with Mr. Hillyer's fee request above, *someone* would have had to complete this work and Defendant likely *reduced* its fee request by hiring Quarles & Brady to do it, given the firm's lower billing rate and greater familiarity with this Court as compared to Venable. Finally, although Plaintiffs do not argue that Quarles & Brady's work was duplicative of Venable's—let alone *identify* any particular tasks that were duplicative—this Court's review of Venable's time entries reveals that Venable, unsurprisingly, focused primarily on substantive issues in this litigation such as drafting briefs, organizing case strategy, and conducting research. For the most part, Venable left the procedural matters up to Quarles & Brady, and Quarles & Brady's fee request for such work is reasonable. The Court will not reduce Quarles & Brady's fee request for being excessive or unreasonable.

In sum, consideration of the parties' arguments on the first factor results in a reduction of $18,540.00 from Defendant's total fee award. This reduction consists of a $13,360 reduction from Hillyer Legal's final fee award and a $5,180 reduction from Venable's final fee award. As explained above, this reduction is appropriate considering the excessive and sometimes duplicative work that occurred as a result of Mr. Hillyer's participation, specifically with respect to Defendant's second motion to dismiss.

### 2. *Novelty and Difficulty of the Questions Involved*

At first glance, this factor appears to weigh rather neutrally. On one hand, the

questions involved in this case—at least those related to the claims brought by Plaintiffs—were not novel or legally difficult. Defendant concedes this. (*See* Doc. 72 at 6). An abundance of caselaw and other legal authority exists concerning the legal questions related to false advertising claims under the Lanham Act, as this is a frequently litigated and relatively well-settled area of law. In this regard, the legal questions—particularly those reached in this case, which never went beyond the motion-to-dismiss stage—were not overly challenging. On the other hand, the Court recognizes Defendant's contention that the "scientific issues involving numerous dietary supplement patents and their applications" added to this case's factual complexity. (*Id.* at 5). The products at issue in this case made the false advertising and unfair competition questions more difficult, at least to some degree. The Court also recognizes that the frivolous, vexatious, and unreasonable manner in which Plaintiffs litigated this case—engaging in apparent forum shopping and pursuing their meritless claims in two Districts and on appeal to the Ninth Circuit—created unnecessary procedural difficulties for Defendant. (*See id.* at 6).

Plaintiffs' argument on this factor specifically focuses on the extensive experience that Mr. Silverman and Venable have with this type of case. (*See* Doc. 73 at 12–13). Plaintiffs note that Mr. Silverman and Venable represented other defendants in separate actions filed by ThermoLife during approximately the same time period and that the motions to dismiss in those cases—drafted by Mr. Silverman and Venable—dealt with similar issues and contained similar arguments. (*Id.*). In light of this experience, Plaintiffs argue that Defendant's counsel spent an unreasonable amount of time researching and drafting the briefs that were filed in this case. (*Id.* at 13). In its Reply, Defendant responds by arguing that the "separate actions" referenced by Plaintiffs are distinguishable, as they "related either to dietary supplement ingredients that were entirely different from BPI's BCAA Products at issue here or involved parties that competed at differing levels in the dietary supplement supply chain such that unique analysis and research as to Plaintiffs' claims against BPI were necessary." (Doc. 74 at 7–8). Defendants further argue that the vexatious and improper manner in which Plaintiffs litigated this case—by, for example,

voluntarily dismissing the Initial Action and then refiling the same claims in Florida with Muscle Beach Nutrition being added as a Plaintiff—contributed to the additional research and briefing that occurred. (*Id.* at 8).

The Court recognizes Defendant's argument that factual differences exist between this case and the other separate actions litigated by Mr. Silverman and Venable, and that these differences meant that the legal research and drafting of briefs in this case was more than a simple "cut-and-paste" exercise. However, this argument only goes so far. Regardless of the factual differences, the motions to dismiss filed by Mr. Silverman and Venable in those separate actions generally dealt with the *same* issues and relied on the *same* legal arguments that Defendant made in this case. Indeed, Defendant even admitted this in its Fee Entitlement Motion. (*See* Doc. 53 at 5–6). Likewise, in granting Defendant's Fee Entitlement Motion, this Court expressly considered the many similarities that exist between this case and some of those previously litigated by Mr. Silverman and Venable. (*See, e.g.*, Doc. 71 at 16 (emphasis added) ("[T]he fact remains that ThermoLife's claims in . . . *Aesthetic Distribution* failed *for the exact same reason* that Plaintiffs' claims failed in this case: a failure to establish direct competition with the defendant or otherwise sufficiently plead facts demonstrating injury. *This is true regardless of the level of competition in each case or the types of products and ingredients involved.*")). The Court finds Defendant's argument disingenuous to the extent Defendant made just the opposite argument in its Fee Entitlement Motion.

The Court generally agrees with Plaintiffs that Defendant seeks fees for seemingly excessive amounts of time spent on various tasks, particularly in light of the extensive experience that Mr. Silverman and Venable have with these types of cases and with litigating against ThermoLife as a Plaintiff. However, the Court finds that any reduction that is necessary as a result is accounted for in the various reductions made elsewhere in this Order. For example, the Court has already reduced Defendant's award to the extent it requested fees for excessive and unreasonable fees associated with Defendant's hiring of Mr. Hillyer and with his work on the second motion to dismiss. Likewise, the Court reduces

Defendant's award for excessive time spent on attorneys' fees-related issues below. Thus, the Court finds that no additional reduction is necessary as a result of this factor.

### 3. *Skill Requisite to Perform Legal Services Properly*

Rather than addressing the specific skillset that was required to properly perform the legal services in this case, Defendant uses this factor to explain the roles, duties, experience, and skillsets of its individual attorneys, each of whom belonged to one of the three law firms representing Defendant. (Doc. 72 at 6–7). Although this is helpful information—particularly as it relates to Plaintiffs' contention that Defendant's use of three separate law firms was excessive and unreasonable—it does not directly address the third factor. Rather, such information is better suited for the ninth factor—the experience, reputation, and ability of counsel. *See infra* pt. III, sec. B(9). Plaintiffs' Response omits discussion of the third factor entirely. Therefore, the Court finds that the third factor does not weigh heavily in this analysis, and it will not consider this factor any further.

### 4. *Preclusion of Other Employment Due to Case*

Defendant contends that, but for this case, the 805.1 attorney hours spent on the Present and Initial Actions would have been expended on other matters. (Doc. 72 at 7). This remark is rather unenlightening. Of course those hours would have been spent elsewhere; it is difficult to imagine a law firm sitting on its hands with nothing to do. Defendant's Reply clarifies that Defendant makes no argument on this factor and believes that it should carry no weight in the analysis. (*See* Doc. 74 at 8 ("BPI's counsel does not contend that they were exclusively engaged in this Action or refused other work as a result of this matter. This issue should be given no weight on the amount of fees requested.")). The Court agrees and will not consider this factor any further.

### 5. *Customary Fee*

Defendant must prove that the hourly rates sought for its attorneys are reasonable. *See* LRCiv 54.2(d)(4)(B). Once Defendant has met its burden of proving reasonableness, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours

16

charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995) (citation omitted). The Ninth Circuit has "repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quotations and citation omitted). Rather, "the prevailing market rate, not the individual contract, provides the standard for lodestar calculations." *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006); *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) (quotations and citation omitted) ("Reasonable fees are to be calculated according to the prevailing market rates in the relevant community."). "Generally, the relevant community [for purposes of the prevailing market rate] is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The Court must consider the prevailing market rate "for attorneys of comparable experience, skill and reputation, which may or may not be the rate charged by the individual attorney in question." *Carson*, 470 F.3d at 892. "[T]he proper scope of comparison . . . extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)).

Though not dispositive, "the rates counsel *actually* charged Defendants is at least one factor the Court may consider in determining whether the rates sought are reasonable." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11–07098–AB (SHx), 2015 WL 1746484, at *18 (C.D. Cal. Mar. 24, 2015) (emphasis added) (citing *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982)). "At minimum the rate an attorney actually charges its client is a 'good starting to point' because 'the actual rate that [the attorney] can command in the market is itself highly relevant proof of the prevailing community rate.'" *Id.* (quoting *Elser v. I.A.M. Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984)). "Affidavits, submitted by the moving party's counsel, regarding prevailing fees in the community and rate determinations from other cases are relevant to whether the hourly rate

sought is reasonable." *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC* ("*American Fitness*"), No. CV-18-04189-PHX-JAT, 2020 WL 1694739, at *7 (D. Ariz. Apr. 7, 2020) (citing LRCiv 54.2(d)(4)(B); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Kaufman v. Warner Bros. Ent. Inc.*, No. CV-16-02248-PHX-JAT, 2019 WL 2084460, at *12–13 (D. Ariz. May 13, 2019)).

Here, Plaintiffs argue that Venable's rates are excessive for the Arizona market and that they should be reduced by 19 percent. (Doc. 73 at 14). Plaintiffs do not make any argument with respect to the rates charged by Quarles & Brady or Hillyer Legal.

### a. Venable Rates

Mr. Silverman, lead counsel for Defendant in the Present and Initial Actions, is a partner with Venable. He submitted an affidavit discussing the experience and qualifications of Venable's attorneys, the time and labor required of them, the hourly rates sought, and at least one case in which comparable rates were approved in a similar action. (*See generally* Doc. 72-3). Mr. Silverman avers that, pursuant to the fee agreement, the hourly rates sought by each Venable attorney reflect a 15-percent discount from Venable's standard hourly rates. (*Id.* at 4). He also avers that the rates sought by each Venable attorney are the rates that were actually charged *and paid* by Defendant BPI. (*Id.*). As for his own experience and qualifications, Mr. Silverman avers that he has practiced in complex commercial litigation since 1988 and that he has significant experience in representing dietary supplement manufactures in false advertising litigation, including suits brought under the Lanham Act. (*Id.*). Several other attorneys and one paralegal worked on this case for Venable: partners Matthew M. Gurvitz, Bret P. Siciliano, Jennifer L. Cappelletty, and Mary M. Gardner; associates Bryan J. Weintrop and David J. Partida; of-counsel John B. Mavretich; and paralegal Eva Fitzhugh. (*Id.* at 2–4). According to Mr. Silverman's affidavit, Attorneys Gurvitz, Weintrop, Partida, and Cappelletty have relevant experience in complex commercial litigation, representing dietary supplement manufacturers in false advertising litigation, corporate finance, securities, and complex mergers and acquisitions. (*Id.* at 2–3). Attorney Mavretich has relevant experience in civil litigation risk management

and insurance coverage disputes. (*Id.* at 3). Attorney Siciliano has relevant experience with clients "in numerous industries regarding transactional advertising matters and also routinely assists clients with audit responses." (*Id.*). Attorney Gardner has relevant experience with insurance coverage disputes and with regulatory issues relating to commercial advertising. (*Id.* at 4). Finally, Paralegal Fitzhugh has twenty years' experience as a legal administrative assistant and over three years' experience as a paralegal. (*Id.*). The requested rates for each of these individuals are as follows:

| | |
|---|---|
| **Partner Silverman**: | $671.50 per hour for 2019, $709.75 per hour for 2020, $743.75 per hour for 2021, $803.25 per hour for 2022; |
| **Partner Gurvitz**: | $578.00 per hour for 2019, $650.25 per hour for 2021; |
| **Partner Siciliano**: | $582.25 per hour; |
| **Partner Cappelletty**: | $616.25 per hour; |
| **Partner Gardner**: | $552.50 per hour; |
| **Associate Weintrop**: | $459.00 per hour for 2019, $531.25 per hour for 2020, $578.00 per hour for 2021, $667.25 per hour for 2022; |
| **Associate Partida**: | $552.50 per hour; |
| **Counsel Mavretich**: | $510 per hour; and |
| **Paralegal Fitzhugh**: | $327.25 per hour. |

(*Id.* at 5–6). These rates reflect the 15-percent discount that was applied pursuant to Venable's fee agreement with BPI. (*Id.* at 4).

Defendant relies on *American Fitness*, a 2020 case from this District in which hourly rates of $890 (lead partner), $690 (associate), and $355 (paralegal) were found reasonable. *Am. Fitness*, 2020 WL 1694739, at *7–9. The court in *American Fitness* based its reasonableness determination on an affidavit submitted by the defendant's counsel and on a 2012 case from this District which it found to be supportive of the requested hourly rates.

19

*Id.* at \*8 (citing *Fed. Nat'l Mortg. Assoc. v. Home*, No. CV-11-01227-PHX-DGC, 2012 WL 10685 (D. Ariz. Jan. 3, 2012) (finding hourly rates ranging from $525 to $665 per hour and $285 per hour for paralegal time)). The Ninth Circuit approved the decision on appeal. *See ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*, 831 Fed. Appx. 325, 326 (9th Cir. 2020). *American Fitness* is supportive of the rates sought by Defendant in this case, particularly given that the case involved the same plaintiff (ThermoLife) bringing very similar Lanham Act claims against a different defendant. The rates sought by Defendant here are less than those sought in *American Fitness*, despite that case being decided three years ago.

Plaintiffs attempt to distinguish *American Fitness* by pointing out that the court in that case did not consider the reasonableness of the associates' rate and "did not allow recovery for that time." (Doc. 73 at 16). This is not true. Although the *American Fitness* court expressed no opinion as to the reasonableness of associates who charged $350 per hour and $650 per hour—*see Am. Fitness*, 2020 WL 1694739, at \*8 n.11—the court rejected Plaintiff's argument for a $350-per-hour cap on the associate hourly rate and found that a rate of $690 per hour for an associate was reasonable. *Id.* at \*8–9. Likewise, the court in *American Fitness* also considered—and found reasonable—the paralegal rate of $355. *See id.* at \*9 n.14 ("[T]he Court also rejects Plaintiff's complaint that the paralegal's hourly rate of $355 was excessive.").[10]

Considering Mr. Silverman's affidavit and *American Fitness*, the Court finds that Defendant has adequately supported the hourly rates sought. The burden shifts to Plaintiffs to prove that the rates sought are *not* reasonable. *See Gates*, 60 F.3d at 534–35. In the

---

[10] With respect to *American Fitness*, Plaintiffs also argue that "the Court [in *American Fitness*] does not appear to have addressed the rates of Arizona being significantly less according to the AIPLA survey than rates in Los Angeles." (Doc. 73 at 16). This is true, as the AIPLA survey and Los Angeles rates were not at issue in that case. However, it is not clear how this argument meaningfully distinguishes the present case. In this Order, the Court fully considers the extent to which the AIPLA survey and Venable's alleged use of Los Angeles rates made a difference as to reasonableness; *American Fitness* remains relevant, persuasive authority regardless.

Response brief, Plaintiffs open by arguing that "Venable's rates (exceeding $800 per hour for many entries) are excessive for the Arizona market . . . as they are based on much higher rates in the Los Angeles area," where Venable is based. (Doc. 73 at 14). Plaintiffs contend that this Court should opt for reasonable rates of $615 per hour for partners, $450 per hour for associates, and $185 per hour for paralegals. (*Id.* at 15).

As an initial matter, Plaintiffs' contention that Venable's rates are "exceeding $800 per hour for many entries" is an exaggeration. (*Id.* at 14). As seen above, Mr. Silverman's rate is the only rate exceeding $800 at *any* time and, even then, his rate was only that high for the year 2022. Less than 80 of Venable's nearly 600 hours were billed at an hourly rate of $800 or higher. (*See* Doc. 72-1 at 54–73). Moreover, the Court notes that the rates proposed for Venable attorneys Siciliano ($582.25/hour), Cappelletty ($616.25/hour), Mavretich ($510/hour), and Gardner ($552.50/hour) are already near or well below Plaintiffs' requested partner rate of $615 per hour. And although Mr. Gurvitz's 2021 rate ($650.25 per hour) is higher than Plaintiffs' requested partner rate, the Court notes that this rate applies to just 3.8 hours of the 14.6 hours billed by Mr. Gurvitz. (Doc. 72-1 at 48). Mr. Gurvitz's remaining 10.8 hours were billed in 2019, when his rate was much lower at just $578.00 per hour. (*See id.* at 2, 11, 12). The Court remains unpersuaded that any reduction is necessary for the rates proposed by Attorneys Gurvitz, Gardner, Mavretich, Cappelletty, and Siciliano. As for Mr. Silverman, the Court finds that his rates—ranging from $671.50 per hour in 2019 to $803.25 per hour in 2022—are not unreasonable merely because they exceed Plaintiffs' requested partner rate of $615 per hour. Given his role as lead counsel and his expertise with these types of cases, the Court finds it reasonable that his rate would be higher than the other attorneys. Moreover, whereas the other partners combined for just 32.4 of the nearly 600 hours logged by Venable, Mr. Silverman's participation in this litigation was far more extensive, as he logged over 300 hours of attorney time.

Plaintiffs cite to several cases in which courts determined the rates for prevailing attorneys to be "much lower." (Doc. 73 at 14–15 (listing cases)). For example, in *Arnhoelter* (cited by Plaintiffs), an hourly rate of $350 was found to be reasonable.

21

*Arnhoelter v. Kaus*, No. CV-20-00403-PHX-JAT, 2020 WL 4673160, at *4 (D. Ariz. Aug. 12, 2020). *Arnhoelter* has little persuasive value here, however, because the decision said nothing about whether or when higher hourly rates may also be reasonable. In *Edwards* (another case cited by Plaintiffs), hourly rates ranging from $215 to $350 per hour were found to be reasonable. *Edwards v. Vemma Nutrition*, No. CV-17-02133-PHX-DWL, 2019 WL 5684192, at *13 (D. Ariz. Nov. 1, 2019). Again, *Edwards* says nothing about whether or when higher hourly rates may also be reasonable. In fact, *Edwards* specifically noted that the hourly rates requested by the attorneys were, "in some cases, *below* market rates for Phoenix attorneys of their caliber." *Id.* (emphasis added). Thus, *Edwards* arguably hurts Plaintiffs' position in this case more than it helps. In *Kaufman* (another case cited by Plaintiffs), an hourly rate of $552 per hour was found to be reasonable. *Kaufman*, 2019 WL 2084460 at *12–13. Once again, *Kaufman* fails to meaningfully inform whether the rates in *this* case are reasonable. Indeed, the plaintiff in *American Fitness* also relied on *Kaufman* in arguing that the defendant's requested rate was unreasonable; the court rejected that argument. *See Am. Fitness*, 2020 WL 1694739, at *8 ("Plaintiff contends the hourly rates sought here are not reasonable based, in part, on *Kaufman*. . . . The fact that, in *Kaufman*, this Court found an hourly rate of $552 was reasonable does not indicate that the higher hourly rates charged here are not reasonable. . . . In fact, the Court [in *Kaufman*] reasoned that the hourly rate sought was reasonable, in part, because the rate sought was what was actually charged. . . . As discussed, the same is true here. Thus, *Kaufman* cuts against Plaintiff's position."). As in *American Fitness* and *Kaufman*, the rates sought by Venable attorneys are the rates that Defendant BPI was actually charged and paid. (Doc. 72-3 at 4). Thus, as in *American Fitness*, the Court finds that *Kaufman*, to some extent, "cuts against Plaintiff[s'] position." *Am. Fitness*, 2020 WL 1694739, at *8.

Plaintiffs' citation to *World Nutrition* is more persuasive. Unlike the above cases—and similar to the present case—*World Nutrition* was a Lanham Act case involving Los Angeles-based attorneys seeking fees in Arizona. *World Nutrition Inc. v. Advanced Supplementary Techs. Corp.*, No. CV-19-00265-PHX-GMS, 2022 WL 2111226, at *4–5

(D. Ariz. June 10, 2022). The partner in that case (over twenty years' experience) requested an hourly rate of $765 per hour for 2021 and $875 per hour for 2022. *Id.* at *5. Likewise, the associate (nine years' experience) requested $525 per hour for 2021 and $635 per hour for 2022. *Id.* at *4. The court compared these rates to other attorneys of comparable experience in the Phoenix area, and found the associate's reasonable rate to be $525 per hour, and the partner's reasonable rate to be $650 per hour. *Id.* The Court also accepted as reasonable the paralegal's requested rates of $350 and $300 per hour, after noting that the paralegal rates were not objected to by the plaintiff. *Id.* at *4, n.8.

Looking at all the cases cited by the parties, the Court finds *American Fitness* and *World Nutrition* to be most helpful, as both were recently decided Lanham Act cases involving attorneys requesting fee rates similar to those requested by Defendant here. Whereas *American Fitness* could be said to set an upper bound of reasonable rates ($890/hour for a lead partner, $690/hour for an associate, and $355/hour for a paralegal), *World Nutrition* could be said to set a lower bound of reasonable rates ($650/hour for a partner, $525/hour for an associate, and $300/hour for a paralegal). Here, the highest of Venable's proposed rates fall neatly in the middle ($732.06/hour for lead partner Mr. Silverman, $558.88/hour for lead associate Mr. Weintrop, and $327.25/hour for paralegal Fitzhugh).[11] Thus, rather than helping Plaintiffs demonstrate and prove unreasonableness, *World Nutrition* only further supports the fee rates requested by Venable attorneys.

Plaintiffs also refer to the 2021 American Intellectual Property Law Survey ("AIPLA Survey"). (*Id.* at 15). Having reviewed the AIPLA Survey, the Court does not find it to be persuasive. First, the AIPLA Survey's region-based data appears highly unreliable with respect to the Phoenix, Arizona legal market. The AIPLA Survey gathered data from 740 respondents spread across the nation. (Doc. 73-3 at 4). Of those 740

---

[11] Here, the Court has averaged Mr. Silverman's rates (which range from $671.50/hour in 2019 to $803.25/hour in 2022) to obtain the $732.06/hour figure. Likewise, the Court averaged Mr. Weintrop's rates (which range from $459.00/hour in 2019 to $667.25/hour in 2022) to obtain the $558.88/hour figure.

respondents, only 92 were from the "Other West" (the region that included Arizona). (*Id.*). The Other West, in turn, included *twelve other states* aside from Arizona: Montana, Wyoming, Colorado, New Mexico, Idaho, Utah, Nevada, Washington, Oregon, California, Alaska, and Hawaii. (*Id.*). The Court has no way of knowing how many of the 92 Other West-respondents were from the Phoenix, Arizona legal market, but it is safe to assume that the Phoenix sample size was small. Moreover, these other states encompass *numerous* other large and diverse legal markets (*e.g.*, Seattle, Portland, Denver, Las Vegas, and countless cities in California except San Francisco and Los Angeles, which were separated as independent regions in the survey) that likely skewed the data in ways that are undeterminable and unaccounted for. (*Id.*). Consequently, any data pertaining to the Other West region is largely meaningless as it relates to the Phoenix legal market.[12]

Even ignoring the AIPLA Survey's region-based data in favor of its nationwide data does little to help Plaintiffs' argument. Plaintiffs are correct that the AIPLA Survey suggests a third-quartile hourly rate of $680 for equity partners with 25–34 years of experience. (*Id.* at 7). However, the third-quartile hourly rate jumps to $855 for partners with 35 or more years of experience. (*Id.*). Over the course of this litigation, Mr. Silverman—who began practicing in 1988—had between 31 and 34 years of experience. Thus, his average billing rate of $732.06 appears perfectly reasonable to the extent it falls between the AIPLA Survey-provided $680 and $855 rates. Even during 2022—when Mr. Silverman had 34 years of experience and his rate was at its highest point ($803.25)—it was still less than the AIPLA-suggested rate for 35-year-attorneys by over $50.00 per hour. All told, the Court puts very little weight into the AIPLA Survey.

Other than the case citations and the reference to the AIPLA Survey, Plaintiffs fail to offer much else to support their contention that Venable's fee rates are unreasonable.[13]

---

[12] In contrast, the AIPLA Survey had 106 respondents from the Washington, DC area alone. (Doc. 73-3 at 4). As a result, the AIPLA Survey's data relating to the DC region is likely far more reliable.

[13] Plaintiff also takes issue with the fact that Venable's hourly rates periodically

Therefore, having fully reviewed Mr. Silverman's affidavit describing the various qualifications and experience of Venable's attorneys, given the Court's understanding of the prevailing rates in the Arizona market, and *especially* considering the 15-percent discount that Venable already applied to their rates, the Court finds that the rates requested by Venable are reasonable and that no reduction is necessary.

### b. Quarles & Brady Rates

Attorney Kevin D. Quigley is a partner with Quarles & Brady. (Doc. 72-2 at 1). He avers that he has "significant experience" with business litigation and complex business disputes in the District of Arizona. (*Id.* at 2). His requested rate increased throughout the course of this litigation. (*Id.* at 3). For January 2019 through November 2019, his requested rate is $570 per hour. (*Id.*). For November 2019 through October 2020, his requested rate is $590 per hour. (*Id.*). For October 2020 through March 2022, his requested rate is $620 per hour. (*Id.*). For March 2022 through September 2022, his requested rate is $665 per hour. (*Id.*). For September 2022 through present, his requested rate is $705 per hour. (*Id.*). Attorney Benjamin Nielsen is also a partner with Quarles & Brady who has worked at the firm since 2012. (*Id.* at 2). Per Mr. Quigley's Declaration, Mr. Nielsen's requested rate increased throughout the course of this litigation. (*Id.* at 3–4). For January 2019 through November 2019, his requested rate is $340 per hour. (*Id.* at 4). For November 2019 through October 2020, his requested rate is $360 per hour. (*Id.*). For October 2020 through March 2022, his requested rate is $395 per hour. (*Id.*). For March 2022 through September 2022, his requested rate is $425 per hour. (*Id.* at 3–4). For September 2022 through present, his requested rate is $470 per hour. (*Id.* at 3). Two associate attorneys with Quarles & Brady

---

increased throughout the litigation. (*See* Doc. 73 at 14 ("Notably, through the course of this case, Venable raised its effective hourly rates by an astounding 20%. That type of inflation is extraordinary, and Venable's proposed rates are not 'reasonable' in this district.")). The Court finds that the rate increases were reasonable, particularly for a case such as this which extended over the course of several years. *See Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1076–77 (N.D. Cal. 2022) (rejecting argument that increases in rates charged by prevailing party's counsel over course of litigation made rates unreasonable).

also assisted in this case and request fees for their work: Gus Cinquino and Lukas Landolt. (*Id.* at 2–3). Per Mr. Quigley's Declaration, Mr. Landolt's rate was $285 per hour for services he rendered in March 2020. (*Id.* at 4). Mr. Cinquino's rate was $385 per hour for services he rendered in October 2022. (*Id.*).

Mr. Quigley avers that "[a]ll of the rates applied in this matter are reasonable and customary for individuals with the same skill, experience and reputation as the attorneys discussed herein" and that the rates are "commensurate with the nature of the services rendered." (*Id.*). He also cites at least one other case from this District in which similar rates were charged for similar work done by similarly experienced employees. (*Id.*). Plaintiffs do not meaningfully challenge the reasonableness of the fee rates requested by Quarles & Brady. (*See* Doc. 73 at 14–16). The Court finds that the hourly rates charged by Quarles & Brady in this matter are reasonable and that no reduction is necessary.

### c.  Hillyer Legal Rates

Attorney Gregory L. Hillyer, co-counsel in the Present and Initial Actions, is a partner with Hillyer Legal. (Doc. 72-4 at 1). He joined this case in May 2019. He avers that he has been registered to practice before the USPTO since 1998 and that he specializes in litigating intellectual property disputes and related commercial matters, including Lanham Act violations. (*Id.* at 2). He was lead counsel for BPI in the separate Florida Action between these same parties. *See BPI Sports, LLC v. ThermoLife Int'l LLC*, No. 0:19-cv-60505-RS (S.D. Fla. Feb. 26, 2019), ECF No. 1. His requested hourly rate for this litigation is $400 per hour, which is a reduced rate compared to his standard rate of $550 per hour. (*Id.* at 3). Mr. Hillyer avers that "[a]ll of the rates applied in this matter are reasonable and customary for individuals of [his] skill, experience and reputation" and that the rates are "commensurate with the nature of the services rendered which require an understanding of several complex disciplines, including, *inter alia*, chemistry, patent law and unfair competition under the Lanham Act." (*Id.*). Plaintiffs do not meaningfully challenge the reasonableness of the fee rate requested by Mr. Hillyer. (*See* Doc. 73 at 14–16). The Court finds the rate charged by Mr. Hillyer reasonable and no reduction is necessary.

26

### 6. *Whether Fee is Fixed or Contingent*

Having reviewed the parties' arguments, (*see* Docs. 72 at 8–9; 73 at 16; 74 at 9–10), the Court finds that this factor does not weigh significantly in the reasonableness analysis. Defendant has attached the relevant fee agreements with respect to Hillyer Legal (Doc. 72-1 at 111–14) and Quarles & Brady (Doc. 72-1 at 116–21), along with a "Separate Statement Regarding the Venable LLP Fee Agreement with BPI" (Doc. 72-1 at 123–24) explaining why no fee agreement exists with respect to Venable. Moreover, the affidavits attached to the Application show that Defendant BPI has already paid the fees incurred, which eases any concern Plaintiffs may have about BPI receiving a windfall. (*See* Docs. 72-2 at 3 ("BPI paid Quarles & Brady the fees that are listed. . . ."); 72-3 at 4 ("BPI paid Venable the fees that are listed. . . ."); 72-4 at 3 ("BPI paid Hillyer Legal the fees that are listed. . . .")).

### 7. *Time Limitations Imposed by the Client or Circumstances*

Defendant states that this factor is inapplicable because no time limitations were imposed by the client or circumstances. (Doc. 72 at 9). Therefore, this factor does not weigh in either direction in the analysis and the Court will not consider it any further.

### 8. *Amount Involved and Results Obtained*

The Complaint does not indicate the specific amount of damages Plaintiffs sought in bringing this action. (Doc. 1 at 42–43). Regardless of the amount of damages, however, Defendant was faced with a meritless, vexatious lawsuit accusing them of false advertising and unfair competition. As a result, Defendant was forced to defend itself against Plaintiffs' claims for over three years and before three different courts spread across the country. Defendant was ultimately successful, as Plaintiffs' claims were not only dismissed, but dismissed with prejudice. Defendant also successfully established that Plaintiffs' claims were frivolous. Given the positive results obtained by Defendant's counsel in representing Defendant, the Court finds this factor to weigh in favor of Defendant's fee request.

### 9. *Experience, Reputation, and Ability of Attorneys*

Defendant argues that its counsel "had the necessary experience and ability to represent BPI in this litigation, as was demonstrated by the results achieved." (Doc. 72 at

9). Plaintiffs do not meaningfully address this factor in their Response brief. (*See generally* Doc. 73). Defendant was represented by three separate law firms and numerous attorneys in this action. As discussed above with respect to the reasonableness of their fee rates, the Court finds that the relevant experience, reputation, and abilities of Defendant's attorneys support the fee award requested in this case.

### 10. Undesirability of the Case

Defendant's Application indicates that this factor is inapplicable. (Doc. 72 at 9). The Court agrees and will not consider this *Kerr* factor any further.

### 11. Nature and Length of Professional Relationship with Client

The Application indicates that Defendant does *not* have a prior relationship with Quarles & Brady and that the two sides "reached a reasonable, arms-length transaction [for Quarles & Brady] to serve as local counsel as demonstrated through [their] fee agreement." (*Id.* at 10). The Court finds that the nature and length of the relationship between Defendant and Quarles & Brady does not weigh against the fee award in this case.

As for the other firms—Venable and Hillyer Legal—the Application notes that Defendant had relationships with both firms in past proceedings. (*Id.* at 9). Nonetheless, Defendant contends that its fee agreements with both firms were reasonable, "arms-length transactions" and that this factor does not weigh against the fee award. (*Id.*). The Court agrees and finds that the reasonableness of Defendant's fee request is supported by the reasonable nature of Defendant's prior relationship with two of its three firms.

### 12. Awards in Similar Cases

The Court has adequately addressed this factor in its discussions of the other factors above—specifically the second and fifth factors. *See supra* pt. III, sec. B(2), (5).

## C. Other Considerations

Finally, Plaintiffs seek reductions based on block billing and for unreasonable and excessive time spent on the attorneys' fees motions. (Doc. 73 at 16–19). Defendant responds that any block billing that occurred should not result in a reduction of fees. (Doc. 74 at 10). Defendant also argues that the amount of time spent on attorneys' fees-related

issues was reasonable. (*Id.* at 12). The Court will address each dispute in turn.

### 1. *Block Billing*

"Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch*, 480 F.3d at 945 n.2 (citation and quotations omitted). The Ninth Circuit has recognized that a district court has the authority to reduce hours that are billed in block format "because block billing makes it more difficult to determine how much time was spent on particular activities." *Id.* (citations omitted). That said, where only *some* of the requested hours are block billed, a district court should not simply impose a blanket, across-the-board reduction. *Id.* Rather, the district court should ensure that the reduction imposed "fairly balances those hours that were actually billed in block format." *Id.* (quotations omitted) (citing *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001)).

Plaintiffs request an across-the-board, 25-percent reduction to Defendant's fee award as a result of block billing. (Doc. 73 at 16–19). However, such an across-the-board reduction would penalize Defendant's counsel for time entries which do not appear to be block billed. Specifically, no obvious block billing occurred with respect to Quarles & Brady's time entries, which were—for the most part—itemized by task. (*See* Doc. 72-1 at 82–106). Additionally, no block billing occurred with respect to Venable's time entries after October 1, 2022.[14] (*See id.* at 66–73). This absence of block billing—by Quarles & Brady and by Venable post-October 1, 2022—is supported by a November 2022 email from Plaintiffs' counsel Matthew Dowd to Defendant's counsel (attached to *Plaintiffs'* Response) acknowledging the absence of block billing in Quarles & Brady's time entries and in Venable's post-October 1, 2022 time entries. (*See* November 15, 2022 Email from Dowd to Silverman, Doc. 73-5 at 2 (emphasis added) ("This email also confirms that, with

---

[14] Defendant explains that "[b]eginning on October 1, 2022, Venable began tracking all time in 1/10 hour increments for each individual task upon beginning preparation for the Application and learning that the Local Rules require task-based billing." (Doc. 74 at 10, n.4).

respect to the itemized statements, the breakdowns of time for block-billed entries were added after the fact, *except for the time entries of Quarles & Brady and except for Venable's October 2022 time entries*.")). Finally, many of Venable's time entries contained only a single task. By the Court's own count, Venable's "single-task" time entries amounted to approximately $115,000 in requested fees.[15] Such single-task time entries are less likely to be block billed.[16] Given the general absence of block billing in Quarles & Brady's entries, in Venable's post-October 1, 2022 entries, and in many of Venable's single-task entries, the Court cannot grant Plaintiffs' request for a blanket, across-the-board reduction of 25 percent from Defendant's fee award. *See Welch*, 480 F.3d at 945.

---

[15] This figure represents the sum of all Venable time entries (between January 3, 2019 and September 30, 2022) which contained only a single task. Such entries occurred on the following dates: February 11, 16, 19, 21, 22, 25, and 28, 2019; March 1, 7, 8, 11–15, 18, 19, and 28, 2019; April 1, 8, 16, 23, and 29, 2019; May 4, 2019; June 7, 2019; July 11, 2019; November 27 and 29, 2019; December 2, 3, 17, 19, and 20, 2019; January 10 and 29, 2020; February 10, 26, and 28, 2020; March 6 and 9, 2020; July 14, 2020; August 17 and 19, 2020; September 9, 2020; October 27–29, 2020; November 7 and 8, 2020; December 2, 3, 17, and 28, 2020; January 4, 5, 8, and 12, 2021; February 11, 12, 22, 24, and 25, 2021; March 2, 17, 23, 25, and 31, 2021; April 5 and 12, 2021; May 5, 27, and 28, 2021; June 9 and 22, 2021; July 1, 3, 5, 6, 12–14, 23, and 26, 2021; August 2, 17, and 18, 2021; September 21, 2021; October 5, 2021; November 1–3, 9, 16, and 30, 2021; December 9, 14, 21, 22, and 29, 2021; January 3, 4, and 10–12, 2022; March 18 and 21, 2022; April 11, 13, 15, 20, and 26, 2022; May 10, 18, 19, 24, and 31, 2022; June 1, 2, 7, 10, and 21, 2022; July 1, 2022; and September 15 and 30, 2022. (*See* Doc. 72-1 at 2–66). The Court's estimation aligns with the total provided in Defendant's Reply. (*See* Doc. 74 at 10 (Defendant estimating "single-entry time provided by Venable" to be $115,782.30).

[16] The Court recognizes that just because these time entries were separated into single tasks does not necessarily mean that they were *contemporaneously* itemized by task. Rather, the tasks may have been originally block billed and then later separated when Venable was preparing its fee request for the instant Application. The Court also recognizes that the list of single-task entries likely includes entries that may still be considered block billing despite only containing a single task. As just one example, the February 21, 2019 entry was for the task "Draft motion to dismiss re: Lanham Act standing issues." (Doc. 72-1 at 5). Although this was only a single task, it was billed for 6.2 hours. (*Id.*). Such a large time entry may arguably still constitute block billing, as it could have been broken down into specific tasks. The Court's block-billing solution accounts for these uncertainties.

However, the Court finds that a reduction due to block billing is nonetheless appropriate. The parties do not dispute that a significant portion of Venable's time entries were *originally* block billed. The parties also do not dispute that these contemporaneously block-billed entries were *later* edited—sometime around October or November 2022, when Defendant was preparing this Application—to provide the time associated with each specific task.[17] Such *post hoc* itemization of the time entries creates legitimate concerns about the accuracy and reliability of Venable and Hillyer Legal's time entries. *See Malbco Holdings, LLC v. AMCO Ins. Co.*, No. CV-08-585-ST, 2010 WL 2572849, at *3 (D. Or. June 22, 2010) ("Although [the moving party]'s counsel has attempted after-the-fact to assign amounts of time for individual tasks in the block-billed entries, it is impossible to accurately recall how much time was spent on specific tasks so long after they were

---

[17] The parties *do* appear to dispute *who* conducted the so-called *post hoc* itemization. Plaintiffs argue that "the *post hoc* itemization was evidently not even done by the attorney that provided the work," further undermining the reliability and accuracy of Defendant's billing entries. (Doc. 73 at 17). According to Plaintiffs, "it appears that Venable primarily used a paralegal and an associate to prepare the itemized time entries that included breakdowns of individual time entries" and that "Mr. Hillyer provided no time entry suggesting that he had any input into the preparation of the itemized time entries." (*Id.* at 17–18). Defendant responds that "[c]ontrary to Plaintiffs' speculation, it was not a paralegal . . . who entered the task-based time entries on the Itemized Statements. . . . Rather, that task was handled by Venable's attorneys Mr. Silverman and Mr. Weintrop[,] each of whom reviewed their own time entries and entered the task-based time." (Doc. 74 at 11). As to Mr. Hillyer, Defendant asserts that he "independently reviewed and affirmed that the task-based time entries on his Itemized Statement accurately reflect the amount of time he spent on each task and, to the extent any entries were incorrect, he corrected them," and that just because Defendant is not seeking fees for the time Mr. Hillyer spent in doing so does not mean that he failed to conduct such a review. (*Id.*).

The Court will not attempt to resolve this dispute. There is some evidence that Ms. Fitzhugh—Venable's paralegal—was involved in the itemization of Venable's time entries. (*See* Doc. 72-1 at 69). However, even taking Defendant's assurances to be true, the fact remains that block billing occurred and that it was not fixed until long after the entries were originally made. Whether it was the attorney or a paralegal who conducted the itemization makes little difference; the task would be challenging for either person to do with complete accuracy after so much time had passed.

performed."); *MKB Constructors v. Am. Zurich Ins. Co.*, 83 F. Supp. 3d 1078, 1088–89 (W.D. Wash. 2015) ("The court, however, is more concerned with the lack of contemporaneous recording and the after the fact reconstruction of [counsel]'s time records.").

Defendant downplays the impact that its *post hoc* itemization of time entries has on the accuracy and reliability of its requested hours, assuring the Court that "[e]ach of BPI's lawyers has affirmed that the time entries provided in the Itemized Statements accurately reflect[] the total amount of time spent throughout the day on the listed tasks such that no reduction is appropriate" and that they "made efforts to eliminate entries relating to fees that were deemed 'unnecessary, duplicative and excessive' and specified the types of entries that were eliminated from the Itemized Statements." (Doc. 74 at 11). Such averments from Defendant's attorneys do little to ease this Court's concerns. The fact remains that the entries were originally block billed, and that specific times were not assigned to the individual tasks until—in some cases—over *three years* after the tasks and hours were originally recorded. Therefore, the Court "will view the time entries by specific task only as a best estimate and not give [Defendant] the benefit of any doubt regarding billing entries." *Malbco Holdings*, 2010 WL 2572849, at *3.

Having reviewed the attorneys' affidavits and all time entries in this matter, the Court will address the block billing issue by allowing block-billed entries equal to or less than three hours in this case. For any block-billed entry greater than three hours, the Court finds that a 20-percent reduction is appropriate. This method—setting a three-hour maximum for block billing—has been used by other courts in dealing with block-billing issues, particularly in the District of Oregon. *See, e.g.*, *Malbco Holdings*, 2010 WL 2572849, at *2 ("[F]ees requested in this district for block billing 'of three hours or more are susceptible to being disallowed' or at least significantly reduced."); *Nikolaychuk v. Nat'l Casualty Co.*, No. 3:17-cv-00921-JE, 2019 WL 1489062, at *4 (D. Or. Apr. 4, 2019) (listing cases) ("Courts in this district have excused this method when the billing period is no more than three hours."). Moreover, because the parties evidently agree that no

impersmissible block billing occurred with respect to Quarles & Brady's time entries and Venable's time entries after October 1, 2022, the Court will only apply this method to the entries which were not contemporaneously itemized—that is, Venable's time entries prior to October 1, 2022, and all of Hillyer Legal's time entries. This *includes* the time entries that only contain a single task, *i.e.*, those entries that were included in the Court's above-calculated sum of $115,000. Such entries could have been broken down into specific tasks, and therefore still pose a threat of block billing. *See supra* n.16.

As to Mr. Hillyer's time entries, the Court notes that it has already reduced his 98.9 hour request by 8.1 hours ($3,240) for work related to non-Lanham Act, state-law claims. *See supra* pt. III, sec. A(1). Specifically, the Court reduced Mr. Hillyer's May 8, 2019 entry by 1.0 hour (from 6.8 to 5.8 hours), his January 8, 2020 entry by 2.4 hours (from 5.9 to 3.5 hours, his January 9, 2020 entry by 3.5 hours (from 4.5 to 1.0 hours), and his January 13, 2020 entry by 1.2 hours (from 6.5 to 5.3 hours). *See id.* The Court takes these reductions into account *before* identifying the Hillyer entries that are subject to the three-hour, block-billing maximum: Mr. Hillyer's May 8, 2019 entry (now 5.8 hours) remains subject to the 20-percent, block-billing reduction; his January 8, 2020 entry (now 3.5 hours) also remains subject to the 20-percent, block-billing reduction; his January 9, 2020 entry (now 1.0 hour) *is no longer subject to the 20-percent, block-billing reduction*; his January 13, 2020 entry (now 5.3 hours) remains subject to the 20-percent, block-billing reduction. Thus, the Court identifies the following entries as being subject to a block-billing reduction: May 6–8, 2019; December 23, 24, 27, and 30, 2019; January 2, 3, 6–8, 13, and 15, 2020.

However, the Court must *also* note that it has already reduced Mr. Hillyer's hour request by 33.4 hours ($13,360) for work related to the second motion to dismiss. *See supra* pt. III, sec. B(1). Specifically, the Court reduced all Hillyer fee requests between December 20, 2019 and January 15, 2020 by 50 percent. *See id.* This included *eleven* entries greater than three hours which are now subject to the additional block-billing reduction (December

23, 24, 27, and 30, 2019, and January 2, 3, 6–8, 13, and 15, 2020).[18] Applying the three-hour, block-billing maximum, the Court will reduce these eleven entries—which total $12,020, accounting for the above-applied, 50-percent reduction—by an additional 20 percent. This results in a reduction of $2,404. The block-billing maximum also applies to three other entries prior to December 20, 2019, each of which requested fees for blocks of time greater than three hours (May 6–8, 2019).[19] (*See* Doc. 72-1 at 75–76). A 20-percent reduction to these three entries results in an additional reduction of $1,600. In sum, the three-hour, block-billing maximum results in a $4,004.00 reduction from Mr. Hillyer's fee award.

As to Venable's time entries, the Court notes that it has already reduced its 580.7 hour request by 6.4 hours ($3,795.68) for work related to FDUTPA and other non-Lanham Act, state-law claims. *See supra* pt. III, sec. A(1). Specifically, the Court reduced Venable's February 16, 2019 entry by 2.7 hours, its April 11, 2019 entry by 0.2 hours, its *other* April 11, 2019 entry by 0.5 hours, its January 13, 2020 entry by 0.6 hours, its November 6, 2020 entry by 1.2 hours, its July 7, 2021 entry by 0.5 hours, and its March 2, 2022 entry by 0.7 hours. *See id.* The Court takes these reductions into account *before* identifying the Venable entries that are subject to the three-hour, block-billing maximum. However, only *one* of these entries was subject to the 20-percent, block-billing reduction prior to accounting for the FDUTPA/state-law claim reduction—that is, only the November 6, 2020 entry (4.2 hours) was greater than 3 hours. Upon considering the 1.2-hour reduction that was applied for work related to the FDUTPA claim, however, the November 6, 2020 entry is reduced to just 3.0 hours and the 20-percent, block-billing reduction no longer applies. The Court

---

[18] The January 9, 2020 entry *would* have been included in this list but for the Court's reduction of 3.5 hours for work related to the unfair competition and civil conspiracy claims, which reduced the entry from 4.5 hours to just 1.0 hour.

[19] The May 8, 2019 entry was reduced from 6.8 hours to 5.8 hours for work related to the unfair competition and civil conspiracy claims. Given that this entry still exceeds the three-hour, block-billing maximum, the 20-percent reduction applies.

*also* notes that it has already reduced Venable's hour request by 7.5 hours ($5,180) for work related to the second motion to dismiss. *See supra* pt. III, sec. B(1). Specifically, the Court reduced all Venable fee requests between December 20, 2019 and January 16, 2020 by 50 percent. *See id.* However, this did *not* include any entries that were greater than three hours such that they would be subject to the additional block-billing reduction. (*See* Doc. 72-1 at 21–24). Applying the three-hour, block-billing maximum to Venable's other pre-October 1, 2022 entries (with the *exclusion* of the November 6, 2020 entry, as explained in the previous paragraph) results in a reduction of $14,546 which shall be reduced from Venable's fee award.[20]

## 2.   *Time Spent on Attorneys' Fees-Related Issues*

Finally, Plaintiffs argue that the amount of fees Defendant requests "for time spent on the attorneys' fees motion itself is entirely unreasonable." (Doc. 73 at 19). The Court agrees, to an extent. As a general matter, the Ninth Circuit permits an award of fees for time expended in preparing motions for attorneys' fees. *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–60 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."); *Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 479 (D. Ariz. 2019) (citing *In re Nucorp*, 764 F.2d at 660) ("[I]t would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee."). Here, Defendant—as the prevailing party entitled to an award of fees—is therefore entitled to fees incurred in preparing the instant Application and the previously granted Fee Entitlement Motion. However, the Court must

---

[20] The Court identified entries greater than three hours on the following dates: February 19–21, 2019; April 29, 2019; May 3, 2019; March 4–6, 2020; September 8 and 9, 2020; November 4 and 5, 2020; January 7, 8, 11, and 13, 2021; July 6 and 12, 2021; December 22 and 30, 2021; January 13, 2022; March 21 and 22, 2022; and May 18 and 31, 2022. (Doc. 72-1 at 2–66). These entries totaled $72,729.75 in requested fees, which is reduced by 20 percent ($14,545.95). Again, the Court has excluded the November 6, 2020 entry, which would have been subject to the block-billing reduction had it not already been reduced by 1.2 hours as a result of the FDUTPA-related work that was involved that day.

still analyze the reasonableness of the hours Defendant's counsel expended in establishing their claim to the fee award.

Defendant requests approximately $127,472.52 in fees incurred while working on attorneys' fees-related issues over the course of the Initial and Present Actions.[21] Although this amount is significant, there are at least some reasons to justify it. Defendant is seeking—indeed, Defendant is *entitled to*—attorneys' fees incurred not just in this Present Action, but also those fees incurred during the Initial Action and during this case's appeal to the Ninth Circuit. Moreover, this case was litigated not only before this Court, but also the Ninth Circuit and the Southern District of Florida. In turn, the issue of attorneys' fees arose at several points in this litigation. First, Defendant reasonably began preparing a motion for attorneys' fees in March 2020, following ThermoLife's voluntary dismissal of the Initial Action and prior to ThermoLife refiling the same claims in Florida. Second, Defendant reasonably began preparing a motion for attorneys' fees in February 2021, following this Court's dismissal with prejudice of Plaintiffs' claims in the Present Action and prior to Plaintiffs appealing that dismissal to the Ninth Circuit. Third, Defendant began preparing the final motion for attorneys' fees in March 2022, following the Ninth Circuit's ruling affirming this Court's dismissal. Notably, the final motion for attorneys' fees was bifurcated; this Court permitted Defendant to first file the Fee Entitlement Motion

---

[21] Plaintiffs' Response states that "Defendant seeks attorneys' fees in excess of $68,704.65 for the preparation of its motion for attorneys' fees." (Doc. 73 at 19). The Court has reviewed Plaintiffs' entire response, as well as all supporting exhibits, and remains uncertain as to how Plaintiffs arrived at this sum. Nonetheless, the Court has arrived at its own total of $127,472.52 as follows: $14,200.53 incurred between March 3 and 10, 2020 for 22.9 hours of work (Doc. 72-1 at 28–30); $4,924.90 incurred between February 19 and 24, 2021 for 6.8 hours of work (Doc. 72-1 at 44–45); $24,125.78 incurred between March 2, 2022 and April 12, 2022 for 33 hours of work (Doc. 72-1 at 55–58); $15,311.48 incurred between May 18, 2022 and June 2, 2022 for 21.5 hours of work (Doc. 72-1 at 64–65); $47,709.13 incurred between September 15, 2022 and October 27, 2022 for 74.5 hours of work (Doc. 72-1 at 66–73); and $21,200.70 incurred during November 2022 for 30 hours of work (Doc. 74-1 at 16–18). These entries align with the entries identified as being related to attorneys' fees issues (categories 6, 8, and 10) by Plaintiffs in their chart titled "Venable Attorney Time Entries Sorted by Categorized Objections." (*See* Doc. 73-7 at 9–15).

(addressing Defendant's *entitlement* to fees only) and to separately file the instant Application for Fees following this Court's ruling on the entitlement issue. This bifurcation of the issues reasonably caused more fees to be incurred for work related to attorneys' fees issues, as both the Fee Entitlement Motion and the instant Application were fully briefed by the parties. In sum, the Court finds that the nature of this litigation justifies a higher fee request for work related to attorneys' fees issues.

That said, the Court nonetheless finds that a reduction is appropriate with respect to fees incurred preparing attorneys' fees motions in this case. The $127,472.52 figure is based on approximately 188.7 hours of Venable work related to attorneys' fees issues and motions. This sum solely accounts for the work that Venable did; it does not include any fees requested for attorneys' fees-related work done by Defendant's other two firms. Thus, the $127,472.52 figure represents a staggering 31 percent of Venable's total fee request ($417,476.23), and the 188.7 hours represents nearly a third of all hours that Venable worked on this case. The Court finds such proportions excessive and unreasonable, particularly given that this case never proceeded beyond the motion-to-dismiss stage.

Additionally, a significant portion of the fees incurred in preparing the instant Application were the direct result of Venable's failure to contemporaneously itemize its billing entries. As discussed above, Venable spent time going back and editing its block-billed time entries to provide the time associated with specific tasks. By the Court's count, this *post hoc* itemization of time entries resulted in almost 30 additional hours of work (more than $15,000) during October 2022, partially explaining why it took Venable nearly *75 hours* of attorney time to prepare the instant Application.[22] Plaintiffs should not be on the hook for fees incurred as a direct result of Venable's failure to properly track its billable hours the first time around. *See Malbco Holdings*, 2010 WL 2572849, at *11 ("A fee

---

[22] The Court's 30-hour estimate for time spent itemizing entries after the fact was found by adding the following October 2022 time entries: 1.5 hours on October 10; 1.9 hours on October 11; 4 hours on October 12; 4.8 hours on October 13; 1.3 hours on October 14; 3 hours on October 14; 3.5 hours on October 14; 2.2 hours on October 19; 1.5 hours on October 20; 5 hours on October 20; and 1 hour on October 25. (Doc. 72-1 at 68–72).

request that is supported by simple affidavits and well-kept records should not be a major task. The law in this area is not new or complex and should not demand significant time to research. . . . [M]uch of the time was spent to cure the block billing problem by assigning time to specific activities. [The non-prevailing party] should not have to pay for that time when the problem was caused by opposing counsel's unacceptable practice of block billing.").

Plaintiffs additionally argue that a reduction is necessary for Venable's work on the motions for attorneys' fees that were never filed. (Doc. 73 at 19). Plaintiffs argue that "BPI offers no explanation of why work on such a non-filed motion warrants an award of 'reasonable' fees." (*Id.*). The Court is unpersuaded. The Court finds "nothing unreasonable" in Defendant's claim for fees associated with motions that went unfiled, as Venable's work on such "motion[s] was a reasonable, if not expected, step in the litigation process that became moot only due to an unforeseen change in the course of litigation." *Gary*, 398 F. Supp. 3d at 490 (quotations omitted) (quoting *Pure Wafer, Inc. v. City of Prescott*, No. CV-13-08236-PCT-JAT, 2014 WL 3797850, at *11 (D. Ariz. July 29, 2014)). In the case of Venable's March 2020 and February 2021 work on unfiled attorneys' fees motions, the "unforeseen changes" were Plaintiffs' decisions to (i) refile the same claims in Florida in an action that would eventually merge with the Initial Action for purposes of attorneys' fees issues, and (ii) file an appeal of this Court's dismissal of the Present Action. The Court finds that Defendant's request for fees associated with this work is reasonable and that no reduction is necessary.

All told, the Court finds that a 25-percent reduction to the fees associated with Venable's work on attorneys' fee-related issues appropriately addresses the excessive and unreasonable nature of Defendant's $127,472.52 fee request for such work. The 25-percent reduction results in a $31,868 reduction to Defendant's fee award. The Court notes that this reduction applies specifically to Venable's fee request.

///

///

1

### IV.    **CONCLUSION**

2

In conclusion, the Court accepts as reasonable the rates proposed by Defendant for

3

the attorneys and other staff at all three firms. However, the hours requested are subject to

4

reasonable reductions, as explained above. These reductions total $44,126, with $23,522

5

being reduced from Venable's fee request and $20,604 being reduced from Hillyer Legal's

6

fee request. The Defendant is awarded $486,207 in reasonable attorneys' fees, with

7

$393,954 to Venable, $73,296 to Quarles & Brady, and $18,956 to Hillyer Legal.

8

Plaintiff Muscle Beach Nutrition, LLC was not part of the Initial Action and is

9

therefore not liable for fees incurred prior to July 8, 2020. However, Plaintiffs ThermoLife

10

and Muscle Beach are jointly and severally liable for all fees incurred during the Present

11

Action, *i.e.*, on July 8, 2020, or later.

12

Accordingly,

13

**IT IS ORDERED** that Defendant's Application for Attorneys' Fees (Doc. 72) is

14

**granted as modified**. The Court approves an attorneys' fee award in the amount of

15

**$486,207**, for which Plaintiff ThermoLife is **solely liable** for any fees incurred prior to July

16

8, 2020 (*i.e.*, during the Initial Action) and Plaintiffs ThermoLife and Muscle Beach

17

Nutrition, LLC are **jointly and severally liable** for any fees incurred on July 8, 2020 or

18

later (*i.e.*, during the Present Action).

19

Dated this 18th day of May, 2023.

20

21

Honorable Steven P. Logan
United States District Judge

22

23

24

25

26

27

28

39